Sweet *v.* Hulbert.

[BROOME GENERAL TERM, July 21, 1868.   *Balcom, Boardman, Parker* and *Murray,* Justices.]

---

In the matter of the application of THOMAS SWEET *vs.* JOHN C. HULBERT, county judge, &c.

A writ of prohibition issues, to forbid a court and party to whom it is directed, from proceeding in any matter designated, then pending before it.   It will lie to prevent the exercise of unauthorized power by an inferior tribunal, in cases where it has jurisdiction, as well as where it has not jurisdiction.

The writ does not issue, of course; it is always in the discretion of the court, and should not issue where the party has a complete and adequate remedy at law.

Under a statute authorizing a certain town to issue bonds, to aid in the construction of a railroad, which provides that on the application in writing of twelve or more freeholders, it shall be the duty of the county judge to appoint, under his hand and seal, three freeholders, residents of the town, to

Sweet *v.* Hulbert.

be commissioners of such town, to carry into effect the purposes of the act, the action of the county judge, on such application, is *judicial.* It is conferred by the statute upon the office of county judge, to be exercised under its seal. The duty requires the exercise of judgment and discretion in the selection of commissioners; and in no sense is the act of selecting them *ministerial.*

If the act under which such application to the county judge is made is unconstitutional, or otherwise unauthorized, that officer should not be permitted to proceed under it.

The legislature of this state has no power to confer upon towns authority, absolute or conditional, to issue bonds and *donate* the proceeds to a private corporation.

Though it were conceded that the legislature has the power to *enable* towns to subscribe for stock in a railroad corporation and issue bonds to pay for the same, it would not follow that it might pass laws enabling towns to issue bonds and *donate* the proceeds, or if it did pass such laws, that any bonds issued or other act done under that authority would be valid against the town. *Per* JAMES, J.

The act of the legislature of this state entitled " An act to authorize the town of Saratoga, in the county of Saratoga, to issue bonds to aid in the construction of a railroad from the village of Mechanicsville to intersect the Glens Falls Railroad," passed April 27, 1868, (*Laws of* 1868, *ch.* 334,) is unconstitutional and void.

That act does not assume to take the money of the tax payers by due process of law, nor in virtue of the right of eminent domain; and it does not come within the legitimate scope and purpose of the taxing power of the government. It, therefore, follows that in passing said act, the legislature exceeded its powers; that the act was unauthorized; and is without validity or force.

The property of the citizen cannot be taken from him without his consent, except by due process of law, or by eminent domain, or by taxation. Against every other mode he is protected.

THIS is an application for the allowance of a writ of prohibition. The applicant is a resident and tax payer of the town of Saratoga, Saratoga county; and John C. Hulbert is county judge of said county.

On the 27th of April, 1868, an act was passed by the legislature of this state, entitled " An act to authorize the town of Saratoga, &c. to issue bonds to aid in the construction of a railroad from Mechanicsville to intersect the Glens Falls railroad."

Section 1 provides, that "on the application in writing

of twelve or more freeholders, residents of the town, &c. it shall be the duty of the county judge to appoint, under his hand and seal, three freeholders, residents of said town, to be commissioners of said town, to carry into effect the purposes of this act," &c.

Section 2 authorizes " the commissioners to borrow, on the faith and credit of the town, $100,000," on terms specified, and to execute the bonds of the town therefor.

Section 3 authorizes " the commissioners to dispose of said bonds," &c. and that the money raised therefrom " shall be *donated* to such railroad corporation or association, as has now, or shall hereafter, file articles of association," to build and operate such railroad.

Section 4, authorizes the raising of money by tax upon the taxable property of the town to pay the principal and interest of said bonds.

Section 5 declares that no bonds shall be issued until the consent in writing be first obtained of a majority of the tax payers in number and amounts appearing upon the assessment roll of 1867.

Application having been made in writing, by twelve or more freeholders of said town, to the county judge, for the appointment of commissioners under said act, and said judge being about to make such appointment, the petitioner applied for said writ, to prohibit said county judge from making such appointment, on the ground that said said act is unconstitutional and void.

*W. A. Beach* and *J. W. Crane*, for the application.

*A. Pond*, in opposition.

*By the Court,* JAMES, J. The first point raised in this case is, that a writ of prohibition is not proper.

A writ of prohibition issues, to forbid a court and party to whom it is directed, from proceeding in any matter

Sweet *v.* Hulbert.

designated, then depending before it. It will lie to prevent the exercise of unauthorized power by an inferior tribunal, in cases where it has jurisdiction as well as where it has not jurisdiction. (*Quimbo Appo* v. *The People*, 20 *N. Y. Rep.* 550.)

The action sought from the county judge, on the application of certain freeholders, is judicial. It is conferred by the statute upon the office of county judge, to be exercised under its seal. The duty requires the exercise of judgment and discretion in the selection of commissioners. The individual is in no way responsible for any acts of those he may select, in the discharge of their duties. In no sense is the act of selecting commissioners ministerial. They do not act on the command of the county judge; he issues no process to them. If, after appointment, the persons designated accept and act, they do so under and by virtue of the statute, and not in virtue of the order designating them as commissioners.

A writ of prohibition does not issue of course; it is always in the discretion of the court, and should not issue where the party has a complete and adequate remedy at law.

If the act under which the application to the county judge is made, is unconstitutional, or otherwise unauthorized, this officer should not be permitted to proceed under it. It is better to stop action at once, even though such action would be void, than to allow proceedings to be had which would subject the actors to prosecution, and others to inconvenience and litigation. Therefore a case is presented in which it is highly proper to grant a writ of prohibition, if we come to the conclusion that the act above referred to is unconstitutional or unauthorized.

The important question on this application may be stated thus: Has the legislature of the state power to confer upon towns authority, absolute or conditional, to issue bonds and *donate* the proceeds to a private corporation?

If the power exists, we need not, on this application, spend any time about the details. Such questions cannot arise until after action under the statute.

This act is different, in the particular of authorizing the money to be "*donated,*" when raised, from that numerous brood of statutes which has preceded it, authorizing towns to bond themselves, in aid of real or imaginary public improvements. In all other acts, stock, or some pretended equivalent, is contemplated as a consideration for the bonds to be issued. But this act authorizes a donation, pure and simple; in other words, the legislature has assumed to authorize, through the instrumentality of commissioners and the taxing power, the taking of a certain amount of the property of one corporation and donating it to another. If this can be done, it is legal robbery; less respectable than highway robbery, in this, that the perpetrator of the latter assumes the danger and infamy of the act, while this act has the shield of legislative irresponsibility.

Towns are one of the political divisions of the state. They are declared by statute (1 *R. S.* 337, §§ 1 *and* 2) to be a body corporate, with capacity to sue and be sued; to purchase and hold lands; to make such contracts, and to purchase and hold such personal property, as may be necessary to the exercise of its corporate or administrative powers; and to make such orders for the disposition, regulation or use of its corporate property, as may be deemed conducive to the interests of its inhabitants; and that no town shall possess or exercise any corporate powers, except such as are enumerated or specially given by law, or are necessary to the exercise of the powers so enumerated or given.

It is thus seen that the power to issue bonds and *donate* the proceeds, is not among the general powers possessed by towns; nor was such a power contemplated in the creation of such political divisions.

It must be conceded that the Court of Appeals has held that the legislature may pass enabling acts authorizing towns to subscribe for the stock of railroads, and issue its bonds to pay for the same; but that court has not yet gone so far as to hold that a town was bound to accept such act, or that the legislature might, by legislative enactment, compel acceptance; or that the legislature might enable the town to issue its bonds and *donate* the proceeds to third parties, either natural or artificial.

If we concede to the legislature the power to *enable* towns to subscribe for stock in a railroad corporation and issue bonds to pay for the same, it would not follow that it might pass laws enabling towns to issue bonds and *donate* the proceeds; or if it did pass such laws, that any bonds issued, or other act done under that authority, would be valid against the town.

The argument in support of such legislative power, and the validity of its enactments, is, " that the legislature has the right to pass any law not specifically prohibited by the constitution; that it possesses the sovereign power of the state, and, like the British parliament, is omnipotent, where not restrained by the constitution of the state or United States." In the language of Chase, justice, in *Calder* v. *Bruce*, (3 *Dallas*, 386,) " I cannot subscribe to the omnipotence of a state legislature, or that it is absolute and without control, although its authority should not be expressly restrained by the fundamental law. * * * The purposes for which men enter into society will determine the nature and terms of the social compact; and, as they are the foundation of legislative power, they will decide what are the proper objects of it; and the nature and end of legislative power will limit it. There are acts which the federal and state legislatures cannot do without exceeding their authority. There are certain vital principles which will determine and overrule an apparent and flagrant abuse of legislative power; as to authorize mani-

fest injustice by positive law; or to take away that security for personal liberty, or private property, for the protection of which governments are instituted. An act of the legislature, contrary to the great first principles of the social compact, cannot be considered a rightful exercise of legislative authority. The obligations of a law in governments established on express compact, and on republican principles, must be determined by the nature of the power on which it is founded. A law that punishes a citizen for an innocent action, that impairs or destroys the lawful private contract of the citizen, that makes a man judge in his own case, or that takes property from A and gives it to B, is against all reason and justice; and, therefore, if there was no restriction in the constitution against such acts, it could not be presumed that the people had entrusted such power to the legislature."

The state constitution does not define the powers of the state legislature. It would be almost impossible to enumerate and define them; but, in delegating to a senate and assembly, with the approval of the governor, the power to make laws, under certain limitations and restrictions, but without enumerating and defining those powers, the people did not, nor did they intend to, invest that body with authority to make laws inconsistent with natural right. If conceded that outside of constitutional restrictions, the legislature possesses the sovereign power of the state, it is only the power the people possessed; and they did not possess the power to destroy the natural rights of a citizen, to declare innocence a crime, or, on their own volition, to take the property of one and give it to another. Inhibition against such acts was unnecessary, because they were inhibited by the higher law of natural right.

As was said by Justice Allen, in *Clark* v. *City of Rochester*, (13 *How. Pr.* 206,) "there is no provision in the constitution of the state, in terms, prohibiting the legislature

from compelling the citizen, either individually or in communities, against their will, to become shareholders in companies formed for the construction of canals, railroads, manufacturing, commercial or other purposes; neither is such power conferred; and its assumption is adverse to the spirit of the whole instrument, and inconsistent with the just rights of the people."

Any attempt by the legislature to exercise such powers, would be as much a violation of the spirit of the constitution, as would the violation of any one of its express provisions.

But the act under consideration is contrary to the spirit of the constitution, if not a violation of its letter. That instrument declares that "no person shall be deprived of his property without due process of law." Legislative enactment is not due process of law. "Nor shall private property be taken for public use without just compensation." The use specified by this act is not a public use, but a donation to a private company; the pretense is to aid in the construction of a work which the public may use by paying for the privilege; still it is private property; beside there is no obligation imposed, or security required, that this work shall ever be completed. The act contemplates no compensation for this money. Therefore taking the property of the citizen to pay these bonds would be taking it for private, not public use, and without compensation; and none the less so because taken through the instrumentality of the taxing power, unless within the legitimate scope and meaning of the taxing power, as I think it was not.

Since the recent decisions of the Court of Appeals, it would be improper for this court to question the authority of the legislature to enact laws enabling a town to subscribe for stock in a railroad, issue its bonds, or to raise money by tax, or to pay for the same, (*Bank of Rome* v. *The Village of Rome,* 18 *N. Y. Rep.* 38,) although if it were a new

question we should hope for a different rule. But the Court of Appeals has not yet held the legislature may enact a law that will authorize town officers, or commissioners to issue its bonds and give them away to a private or public corporation; or if it does, that such a law would be valid or binding on the town, or afford any protection to one who should seek to enforce it.

Every statute authorizing the bonding of towns to aid in the construction of railroads, &c. which has as yet been upheld by the courts, contemplated some direct equivalent, in stock or otherwise, before issuing and delivering the bonds or their proceeds. In this act no equivalent, real or imaginary, is contemplated—none certainly secured. The act directs the proceeds of the bonds to be donated; not upon the completion of the work, but upon the organization of a company or association; it does not devote the money to the construction of the railroad, through public officers devoted to the duty, but donates it to a company, and then declares it shall be employed and used in the construction of a railroad. The gift is positive, the use is directory. The company gets the money, but neither the public, nor the tax payers, nor the town, get any security that the road shall ever be completed. The only security required is that the road shall be completed and the money expended, without saying when.

The donation provided by this act is not for a public improvement, the tax is not authorized as such. To that end an appropriation should be directly to the object, and the act should direct the amount to be levied, and when. This act makes no appropriation—directs no work to be constructed—but simply authorizes the town, on certain conditions, to issue its bonds, give away the proceeds, and then tax the citizens to pay the principal and interest. To call this a legitimate exercise of the taxing power, or within the scope and meaning of such power, would be an abuse of terms.

Sweet *v.* Hulbert.

A law .may be declared invalid when it violates the latent spirit of the constitution as well as when it comes in collision with some express provision thereof. An act empowering the supervisor of a town to issue its bonds in amount equal to the value of all the real and personal estate therein and donate the same to another town, and authorizing the officers of said town to levy the amount upon the taxable property of said town, would be no more a violation of the latent spirit of the constitution than is the act under consideration, and would be as much a violation of that instrument as would a statute directing a new trial in a court of law, or declaring a man guilty of an offense, or granting a pardon after conviction.

"The property of the citizen is, to some extent, in the power and at the disposal of the government. Its use may to some extent be regulated. It may be condemned by appropriate process as injurious to the health, or morals, of the public; or, to the well being and safety of the state; it is liable to be taken for public purposes upon just compensation made; and is liable to assessment and taxation for the general purposes of the government, or for local benefits and improvements. But the citizen does not hold his property by so slight a tenure that it can be taken from him by the legislature for any and all purposes, either under the guise and power of taxation, or color or pretense of exercising any of the other recognized powers of the government. All power in the legistature over the property of the citizen, is derived from the people, and is either directly conferred by the terms of the constitution, or impliedly granted, as incidental to some power expressly given, or results from the necessities of government, and exists as an incident to government." (*Clark* v. *City of Rochester, supra.*) Authorizing a town, through its officers, or by commissioners, to donate its property to a private,

or *quasi* public corporation, is not among such express or implied powers.

The property of the citizen cannot be taken from him without his consent, except by due process of law, or by eminent domain, or by taxation. Against every other mode he is protected.

The act under consideration does not assume to take the money of the tax-payers by due process of the law, nor in virtue of the right of eminent domain; and it does not come within the legitimate scope and purpose of the taxing power of the government; it therefore follows that in passing said act the legislature exceeded its powers; that the act was unauthorized; and is without validity or force.

It is to be regretted that so important a question should arise on a motion, but being presented and properly and necessarily involved, we could not escape its consideration. We therefore allow the writ.

[St. Lawrence General Term, October 6, 1868. *James, Rosekrans, Potter* and *Bockes*, Justices.]