In the matter of the TAY-PAYERS OF THE TOWN OF KINGSTON.

In respect to every *act of the legislature,* promulgated as a law, it must be presumed that it was *correctly passed,* and the contrary must be made to appear by *proof.*

The "public moneys or property," stated in the constitution of the state, can only mean property belonging to the state, strictly such as the collected revenues of the state from any source, the buildings owned by the state, the state canals, the salt springs, &c.

But the law of 1869, providing for the bonding of a *town* by a majority of the tax-payers, for the purpose of building a railroad, does not thereby appropriate any of the public moneys or property of the state, as it is in fact, the moneys or property of the individual tax-payers of the town that become liable to be taken to pay the interest or principal of the bonds issued, not moneys or property belonging to them collectively.

Nor is the taking of stock by the town, in aid of such railroad, "lending the credit of the state," even as a subdivision of it, to such corporation, as prohibited by the constitution. Nor is it strictly "lending the credit" of the town to take stock in a railroad company. It is rather acquiring title or property in a corporation and paying its price or value. The town by taking the stock, becomes a stockholder, and sustains the same relation to the company as an individual stockholder.

It is not requisite that these railroads be formed under the *general law.* The language of the constitution is that "corporations *may* be formed under general laws" &c. It is not mandatory, but permissive, in the discretion of the legislature, where, in their judgment the object of the corporation cannot be attained under general laws.

The objection that this law of 1869, is void because it authorizes taxation for a private and not a public purpose—that is, to pay the interest and principal of the bonds, cannot be sustained. Saying nothing of the history of the state and federal governments in their policy and practice to furnish aid through taxation, directly or indirectly, to private objects, deemed to be meritorious or of a *quasi* public character, the conclusive answer is that, as above stated, if the subject is viewed as a mode of purchasing property and paying for it, the objection disappears.

*Before the County Judge, October* 24, 1870.

IN the matter of the petition of the tax-payers of the town of Kingston, Ulster county, to bond said town for

$200,000, to take stock in the Wallkill Valley Railroad Company. The facts are stated in the opinion.

R. BERNARD *for petitioners.*
T. R. WESTBROOK, *for objectors.*

A. SCHOONMAKER, jr. *County Judge.*—The petition in this matter is as follows: " The petition of the undersigned persons and corporations, composing a majority of the tax-payers of the town of Kingston, county of Ulster, and state of New York, whose names appear upon the last preceding tax roll of said town, as owning or representing a majority of the taxable property of the town, respectfully shows our desire that the said town of Kingston shall create and issue its bonds to the amount of two hundred thousand dollars, and invest the said bonds or proceeds thereof in the stock of the Wallkill Valley Railroad Company ; and your peti-tioners do hereby request you to cause to be published the proper notice to take proof of the facts set forth in this petition."

This petition was presented to the county judge on the 30th day of September last, and the notice required by law was thereupon published in the newspapers of the village of Kingston. In pursuance of the notice a hearing was had, and some testimony taken on the 12th of October, instant, and a further hearing had and the residue of the testimony taken on the 17th instant.

The testimony adduced in support of the petition shows the following facts:

That the whole number of tax-payers in the town of Kingston, whose names appear upon the last preceding tax roll of the town, being the roll for the year 1869, is 3023, and that of this number 1700 have signed the petition, being 188 more than one half.

That the total valuation of the taxable property of the town upon the same tax roll is $3,843,998, and that the

valuation of the property of the signers of the petition as represented on the said roll is $2,040,721 50, being $118,-222 50 in excess of the one half of the taxable property of the town.

It thus appears by the testimony that the provisions of the statute have been fully complied with, and that the necessary steps have all been taken to authorize a judgment declaring the town property bonded for the purpose stated in the petition.

Objection, however, is made by counsel for certain tax-payers who oppose the bonding of the town, that the law under which the proceedings have been taken is unconstitutional, and that for this reason no judgment ought to be rendered.

The first objection is based on section nine, of article one of the constitution, which provides that " the assent of two thirds of the numbers elected to each branch of the legislature shall be requisite to every bill appropriating the public money or property for local or private purpose."

It is urged that this law provides for appropriating "*the public moneys or property*" for local and private purposes, and it is *argued* that the assent of two thirds of the members was not given to the bill.

I understand that in respect to every act of the legislature promulgated as a law, it must be presumed that it was correctly passed, and that the contrary must be made to appear by proof. The court of appeals has so decided (*The People* agt. *The Supervisors of Chenango*, 4 *Seld.*, 317). In this matter no proof has been given nor offered to show that this law was not passed in a constitutional manner. The journals of the legislature contain the evidence on this subject, and might have been produced. The burden was on the contestants to do so, and having failed to assail the validity of the law by proof, it must be presumed to have been rightly passed.

But in my judgment it is not correct to say that this law

appropriates "the public moneys or property." The public moneys or property can only mean. the moneys or property belonging to the state, such as the collected revenues of the state from any source, the buildings owned by the state, the state canals, the salt springs, &c. It is idle to claim that this law appropriates any such moneys or property. It is more correct to say that it takes private moneys or property. It is the moneys or property of the individual tax-payers of a township, that become liable to be taken to pay the interest or principal of the bonds issued, not moneys or property belonging to them collectively.

Another objection is based on section nine of article seven of the constitution, which provides that "the credit of the state shall not, in any manner be given or loaned to or in aid of any individual associations or corporations." It is assumed in support of this objection that taking stock in a railroad company is lending the credit of the state or part of the state, to or in aid of such corporation, and it is insisted that the state being prohibited from doing such an act, every subdivision of the state is embraced in the prohibition. If this proposition is sound, it must also be true that what the people of the state as a whole are prohibited from doing, every citizen of the state is equally prohibited from doing, and consequently no individuals can take stock. Such a conclusion, however, is not likely to meet much favor.

But this objection seems to me to arise from a misapprehension of the true character of these bonding laws. It is not strictly "lending the credit" of the town to take stock in a railroad company. It is rather acquiring title or property in a corporation and paying its price or value. No one doubts that the state can own the whole of any species of property—like a canal, a highway, a railroad, a state house, a library, &c. And if the state can own the whole of any such property, it can own any proportionate part. Nor does any one doubt that any subdivision of the state can, like the state, own the whole of any kind of property,

if authority be given by the legislature. And it necessarily follows that if a town can own the whole of a piece of property, it can own a part of it, and that some one else can own the other part.

A stockholder in a railroad is a part owner of the road, and has a voice in the control and management of it, in proportion to the amount of stock owned. A town, by taking stock, becomes a stockholder, and sustains the same relation to the company as an individual stockholder. It seems clear, therefore, that instead of "lending its credit," in any fair meaning of the phrase, a town, by taking stock in a railroad, becomes the purchaser and owner of property precisely like an individual. The issue of bonds is only the machinery used to pay for the property, like an individual giving his note or executing a mortgage.

Another objection is based on section one of article eight of the constitution, which is as follows:

"Corporations may be formed under general laws; but shall not be created by special acts except for municipal purposes, and in cases where, in the judgment of the legislature, the object of the corporation cannot be attained under general laws. All general laws and special acts passed pursuant to this section, may be altered from time to time or repealed."

It is argued that there is a general law authorizing the formation of railroad companies, and that the act of 1869, which authorizes the bonding of towns to take stock in such companies, excepts certain counties, and is therefore, not as general as the original law. This objection owes its force to a construction of the section above quoted, which is not warranted by its terms. It is urged that corporations "must" be formed under general laws. But such is not the fact. The language of the section is that "corporations *may be* formed under general laws." It is not mandatory, but permissive, in the discretion of the legislature, where, in the judgment of that body, the object of the corporation

cannot be attained under general laws. And we find, as matter of history, that corporations have been constantly created by special act since the adoption of this constitution. But the amendment in question does not interfere with the formation of railroad corporations under the general law. The law remains intact. The amendment only authorizes a new class of stockholders. It provides that the people of any township in the state, except a few specified counties, may, by their own consent acquire stock in a railroad, and a voice in its management. I cannot see anything in this repugnant to the letter or spirit of the constitution.

A final objection is that the law is void because it authorizes taxation for a private and not a public purpose—that is, to pay the interest and principal of the bonds. This is the ground of the decision of the supreme court of Michigan, in the case of the *People* agt. *The Township Board of Salem*, and also of the supreme court of Wisconsin, in the case of *Whiting* agt. *Sheboygan Railway Company*.

In the latter case, however, the question was whether the legislature could raise money by tax, or authorize it to be raised, for the purpose of donating it to a private corporation, in which neither the state nor the taxpayers had any ownership. The court held that the legislature had no such power. The same principle was decided by the supreme court of this state, in *Sweet* agt. *Hulbert* (51 *Barb.*, 316). But the elements of a gift without ownership by the taxpayers, of stock or property, as an equivalent for the money raised, are not involved in this matter.

The objection which the Michigan court sustains, and which is here raised, is not based on any provision of the constitution. It is a dogma of the courts and of political economists, and is claimed to be an elementary principle of government.

Without discussing the question whether this be so or not, it is enough to say that it is matter of familiar history, that the policy and practice of both the federal and state

governments have been to furnish aid through taxation, directly or indirectly, to private objects deemed to be meritorious, or of a *quasi* public character. The federal government has gone further, and has repeatedly donated outright, and with great profusion, public moneys and public property to various private objects. Witness the grants for the Pacific railroad, and for railroads and other improvements in some of the states. In this state, also, the policy of legislation has been to furnish aid directly to railroads and canals, (including the Delaware & Hudson Canal, one of the objectors,) and to authorize localities to take stock in such enterprises. And in a majority of the other states, the course of legislation has been of a like character, and has been sustained by their courts. If a principle of government is to be inferred from the *practice* of the law making bodies in this country, and not to be sought for solely in the maxims of political economy, the doctrine of the Michigan case does not seem to be sustained.

The observations in reference to the second objection above referred to, are also applicable here. If the subject is viewed as a mode of purchasing property and paying for it, these various objections disappear.

It is also proper to observe that these objections all rest on the assumption that a railroad is necessarily and exclusively a " private object." If a railroad can, in any fair and proper sense be deemed a public object, the objections are not tenable.

Section 18 of the general railroad act contains this provision : " All real estate acquired by any company under and pursuant to the provisions of this act for the purposes of its incorporation, shall be deemed to be acquired for public use." And the courts say that railroads are at least of a *quasi* public character.

But it is not necessary to lay much stress on this point. In the discussion, so far, I have viewed the subject as an open question. But the question of the constitutionality

of the laws authorizing towns to take stock in railroad com-
panies, and issue bonds to pay for the same, is in fact no
longer an open one in this state.

The court of appeals, in four reported cases, has, after full
argument and deliberation, affirmed the constitutionality of
these laws. In the *Bank of Rome* agt. *The Village of Rome*
(18 *N. Y.*, 38); in *Starin* agt. *The Town of Genoa,* and *Gould*
agt. *The Town of Sterling,* (reported together in 23 *N. Y.*,
439); and in the *People* agt. *Mitchell* (35 *N. Y.*, 551), this
question has been adjudicated. These decisions are con-
troling and must be obeyed and followed by all inferior
courts and officers.

It was suggested that the points now raised were not
passed on in those cases. But that cannot well be known.
The printed opinions of the judges may not discuss these
points; but it must be presumed that the whole constitution
was before the court, when these cases were considered and
decided, and that every constitutional objection that could
legitimately be raised was present to the minds of the mem-
bers of the court, and passed on in the final decision made.

It cannot be presumed that the court overlooked any
valid objection to these laws, existing in the constitution,
especially when these same objections were all necessarily
involved in the cases decided. It may be deemed appro-
priate, by the same court, to allow the question to be
opened for further discussion and examination; but until
that shall be done the decisions already made must stand as
the law of the state.

I therefore, overrule the objections raised, and render
judgment in accordance with the prayer of the petitioners