## SUPREME COURT.

THE PEOPLE *ex rel.* DeWITT C. WHEELER agt. EDWARD COOPER, mayor, &c.

*Charter of the city of New York — Power of mayor to remove a hold-over officer — When a vacancy exists to which the mayor can appoint without confirmation — What are judicial as distinguished from executive acts — Office of the writ of prohibition — will issue to restrain a threatened usurpation of power on the part of the mayor in the removal of a hold-over officer.*

The charter of the city of New York (*Laws of* 1873, *chap.* 335, *sec.* 25) provides that a police commissioner "shall hold his office for the term of six years and　*　*　*　until a person is duly appointed in his place. The terms of office of all such　*　*　*　shall commence on the first day of May." The charter further provides that the mayor shall, within ten days from the occuring of any vacancy, whether by expiration of the term or otherwise, nominate for confirmation to fill such vacancy, which nominee, when confirmed, shall hold his office for the unexpired term of his predecessor.

By amendment (*Laws of* 1874, *chap.* 300, *sec.* 3) the mayor was given the power of appointment without confirmation "to fill any vacancy　*　*　.　*　which　*　*　*　occurs from death, resignation or other cause than the expiration of the full term :"

*Held,* that under these provisions, when the term of office of a police commissioner has expired, there exists, *de jure,* a vacancy; that the person holding over is an officer only *de facto ;* that there is no *unexpired* term to which the mayor can appoint.

*Semble* a nomination and confirmation would be for a full term of six years and not for the unexpired term of six years dating from the termination of the previous term. [REP.

Under the charter which provides that the heads of departments, police commissioners and others "may be removed by the mayor for cause, after opportunity to be heard :"

*Held,* that the mayor, in making removals, acts *executively ;* but in giving

The People *ex rel.* Wheeler agt. Cooper.

*opportunity to be heard* and determining the existence of the *cause* he acts *judicially*. Such judicial action is subject to review in the courts by *certiorari*. *Prohibition* will also lie if he shall commence proceedings to determine whether, in the case of a *hold-over* officer, there was *cause* for removal. Having, in such a case, no jurisdiction to try the question of *cause* and having in another parallel case overruled the objection to his jurisdiction, the presumption that he will not assume a jurisdiction beyond his powers does not apply, and the courts will, by prohibition, prevent his proceeding on the charges preferred. The rule of presumption fails where the reason of it has no application.

*Chambers, New York County, August,* 1879.

In 1873 the legislature passed an act, commonly called the charter of the city of New York, which provided, among other things, as follows :

"§ 25. The mayor shall nominate, and by and with the consent of the board of aldermen, appoint the heads of departments and all commissioners    *    *    *." "Every head of department and persons in this section named,    *    *    * shall hold his office for the term of six years, and in each case until a person is duly appointed in his place    *    *    * and any such nomination or nominations to fill *any vacancy* which shall hereafter occur by reason of the expiration of the term of office of any officer or from any other cause    *    *    * shall be made to the board of aldermen within ten days from the date of any such vacancy and any person who shall be appointed to fill any such vacancy shall hold his office for the unexpired term of his predecessor    *    *    *. The heads of all departments    *    *    * and all other persons whose appointment is in this section provided for, may be removed by the mayor for cause and after opportunity to be heard    *    *    *.

"No officer so removed shall be again appointed to the same office during the same term of office."

In 1874 the legislature passed an act to amend the charter of 1873, and, among other things, provided as follows :

"§ 3. The mayor of said city shall hereafter appoint, with-

out confirmation of the board of aldermen, a person or persons to fill any vacancy or vacancies which now exist or may hereafter occur from death, resignation or *cause other than the expiration of the full term*, in any office to which ＊ ＊ ＊ he is empowered to appoint by and with the consent of the board of aldermen."

Pursuant to the foregoing provisions of the charter, on the 31st day of December, 1875, the relator was duly appointed a police commissioner of the city of New York, to fill a vacancy caused by the removal of George W. Matsell whose term of office, as such commissioner, would have expired May 1, 1878. The relator duly qualified and entered upon the duties of police commissioner, and his term of office expired May 1, 1878, but no person having been appointed to fill the vacancy, caused by the expiration of the relator's term of office under the statute, the relator has ever since continued to discharge the duties of such office.

In May, 1878, the mayor of the city nominated to the board of aldermen, Mr. George Jones to the office of police commissioner to fill the vacancy caused by the expiration of the term of office of the relator, which nomination was rejected by the said board, because the nominee would not accept the said office. The respondent entered upon the office of mayor of the city of New York on the 1st day of January, 1879, but since said accession to office has made no nomination to fill the vacancy existing in the police board caused by the expiration, as aforesaid, of the term of office of the relator.

On 31st day of July, 1879, the mayor caused to be served upon Mr. Wheeler the following notice containing charges or causes for his removal:

### THE MAYOR'S CHARGES.

DE WITT C. WHEELER, Esq., *police commissioner of the city of New York:*

SIR. — You are hereby notified that you will have an opportunity to be heard before me, at the mayor's office in the city

The People *ex rel.* Wheeler agt. Cooper.

hall, on the 4th day of August, A. D. 1879, at 1 o'clock, P. M., concerning the following charges or causes of removal from office:

*First.* That you, at one or more times, during the period between the 7th day of June, 1876, and the 2d day of April, 1878, converted to your own use, or took, or withheld, or appropriated, or made use of certain sums of money, not your own, which came into your possession or under your care, by virtue of your office as police commissioner, or as treasurer of the board of police of the city of New York, or that you took the same from an officer or employe of the department of police, whose duty it was to pay over the same, under your supervision, to certain persons thereto entitled.

*Second.* That you, being a commissioner of police, having received during the period between June 5, 1876, and April 2, 1878, money as the proceeds of sales of cloth and articles of equipment to members of the police force, did not promptly pay the same to the persons furnishing such cloth and other articles; and also that you retained a portion of the money so due until on and after the 29th day of July, 1879.

*Third.* That by reason of your delay in paying part of certain funds in your hands (or which had been placed in your hands) to certain persons to whom the sum was due, interest was charged and collected upon sums so due and the funds committed to you by reason of your being a commissioner of police and the treasurer of the board of police, were diminished and depleted by such payments of interest at several times during the period between July, 1876, and July, 1878.

*Fourth.* That certain cloths purchased at the central office of the police department by members of the police force, under the regulations of said department, were sold to such members of the police force at advances upon, or with the addition of commissions or allowances to, the prices charged by the person or persons furnishing such cloths; and that such advances or commissions were received by you, an officer

of the city government, to wit: A commissioner of police and treasurer of the board of police, and that you did not account for such advances or commissions, but withheld and retained the same.

*Fifth.* That you, at various times, between the 5th day of June, 1876, and this 31st day of July, 1879, did pay yourself and take or receive from the funds of the city of New York, intrusted to the police department, a salary as police commissioner of the city of New York when you were not entitled to receive the same, in that, at various times during the above mentioned period, you had received certain fees, perquisites, commissions, per centages or other moneys which should have been paid into the treasury of the city, and had not first made, under oath, a detailed return to the comptroller showing the amount of all such fees, commissions, per centages or perquisites received by you and did not otherwise comply with the requirements of the statute in such case made and provided before you became entitled to receive such salary.

Copies of the report and documents submitted to me by William Pitt Shearman, commissioner of accounts, are herewith transmitted.

EDWARD COOPER,

*Mayor.*

*July* 31, 1879.

In March, 1879, the mayor held in the case of Erhardt that although the term of office of a police commissioner had expired, that he had the authority, under the provisions of the charter, to remove him from office for cause.

The relator in this case claiming that his term of office having expired the respondent had no authority to remove from office applied for an alternative writ of prohibition which was granted and the question now to be determined is whether this writ shall or shall not be made permanent.

*Elisha Root* and *George Bliss*, of counsel for relator.

*William C. Whitney*, of counsel for respondent.

The People *ex rel.* Wheeler agt. Cooper.

VAN BRUNT, *J.*— In considering the questions arising upon this motion, I shall follow the order marked out by the counsel in their arguments. These questions are: First. Do the charges preferred by the respondent against the relator form, if true, a sufficient cause for the removal by the respondent of the relator from office? Second. Is the relator subject to removal by the respondent, his term of office having expired, and a vacancy existing in said office by reason of such expiration of term, which can only be filled by the respondent, by and with the consent of the board of aldermen? Third. If the respondent had no power to remove the relator, will a writ of prohibition lie to prevent the respondent from attempting such removal?

It does not seem at all necessary to discuss the first point at length. It is true that the charges preferred by the mayor against Mr. Wheeler are not drawn with that technical accuracy which we have a right to expect in an indictment or pleading. The drawer of the charges does not seem to have known exactly how the alleged offenses ought to be stated; but they sufficiently show what is the dereliction of duty complained of. It may be very true that the acts charged did not come immediately within the sphere of the duties of Mr. Wheeler as police commissioner; but the fact that he occupied the position of police commissioner, enabled him to perpetrate the wrongs alleged against him, and he could have had no possible connection therewith if he had not filled that office. If an incumbent of an office uses the office as a means of doing wrong, this fact forms certainly a good cause for action by the proper authorities. In the cases cited by the learned counsel for the relator, no other or different rule is laid down, it being simply held in those cases that an official cannot be removed from an office because of previous derelictions of duty in another office. The charges, therefore, if true (and for the purposes of this motion they must be assumed to be true), seem to me to be sufficent to justify the action of the mayor.

The People *ex rel.* Wheeler agt. Cooper.

This brings me to the second point involved, which is as follows : " Is the relator subject to removal by the respondent, his term of office having expired, and a vacancy existing in said office by reason of such expiration of term, which can only be filled by the respondent, by and with the consent of the board of aldermen ? " The solution of this question depends entirely upon the construction which is given to the twenty-fifth section of the charter.

A very brief examination of the wording of this section, chaotic as it is in its construction, taken in connection with the composition of the police board, seems to leave but little doubt as to what the intention of the legislature was.

The board of police was to consist of four members, and the legislature seems to have been studiously anxious to avoid the possibility of the happening of any contingency by which the number of persons authorized to act as police commissioners should be reduced. It was the intention that the board should be evenly balanced, and that the affirmative vote of three-fourths of the board should be required before action could be taken by it.

This solicitude is plainly marked by the act of 1873, which provides that in each case the person whose term of office has expired shall hold his office after the expiration of his term until a person is duly appointed in his place (a provision entirely unnecessary, as, under the Revised Statutes, he could have held over), and is emphasized by the act of 1874, which provides that the mayor shall hereafter "appoint, without confirmation of the board of aldermen, a person or persons to fill any vacancy or vacancies which now exist or may hereafter occur, from death, resignation or cause, other than the expiration of the full term in any office to which he is empowered to appoint by and with the consent of the board of aldermen." By the charter of 1873 the mayor only had power to fill a vacancy, arising from any cause, by and with the consent of the board of aldermen. By the act of 1874 the mayor, without the consent of the board of aldermen,

may fill a vacancy arising from any cause other than the expiration of the full term. In the case of a vacancy arising from any cause other than the expiration of the full term the statute gives the mayor the power to fill for the residue of the term ; but where a vacancy arises by the expiration of a full term the mayor has no power to appoint, and he was not given that power because the statute had designated who was to hold the office until a person to fill the office should be nominated by the mayor and confirmed by the board of aldermen, and this provision having been made there was no danger of there being in existence a person authorized to act, although a vacancy existed by the expiration of term of office.

The legislature having been so careful to provide for the equilibrium of the board never could have intended to have put it in the power of the mayor and the governor to destroy that which, with so much care, had been created by it. A very brief examination of one or two points in the statute seems to place this interpretation beyond question. In directing the manner in which vacancies shall be filled the charter provides that any nomination to fill any vacancy which shall hereafter occur by reason of the expiration of the term of office of any officer shall be made, &c. ; thus treating every office as vacant after the expiration of a full term of office, although the person whose term of office has expired may still be performing the duties of the office.

The provisions of the charter in respect to removals must be read so as to give the mayor power to remove from office for cause, for the purpose of creating a vacancy which may be filled by a person proper to perform the duties. Under the charter of 1873, as the mayor had no authority to fill any vacancy without the consent of the board of aldermen, there was no necessity of giving any power to the mayor to remove an officer whose term of office had expired, as the filling of the vacancy existing by the expiration of the term itself effected the removal of the incumbent, and no interpretation

of the act of 1874 can extend the power of removal as given by the charter of 1873. Furthermore, we have already seen that the legislature has endeavored to guard in every way against the possibility of the even balance of the board being destroyed for a moment; yet, if the mayor may remove an officer who is holding over after expiration of term, such balance must be destroyed, temporarily, at least, because the mayor has no power to appoint without the consent of the board of aldermen, except for an unexpired term, and consequently, the office, if the mayor has power of removal, must remain vacant until a nomination by the mayor is confirmed by the board of aldermen, which nomination and confirmation, without any act of removal, would of itself have ousted the incumbent.

Numerous cases have been cited by the learned counsel to the corporation to show that an office is not vacant, although the term of office of the incumbent has expired, if the incumbent continues to discharge the duties of the office under the provisions of law. These authorities, however, do not affect the construction of a statute which expressly treats in such a case the office as vacant. The last clause of section 25 seems to be conclusive. It provides that no officer so removed shall be again appointed to the same office during the same term of office. Such a provision can have no possible application to the case of a party whose term of office has expired. Mr. Wheeler, if removed, would be immediately eligible to reappointment. The last clause quoted imposes a penalty upon parties against whom the mayor can legally act, which penalty cannot possibly apply to a hold-over officer. This fact seems to clearly demonstrate that the legislature intended to give the mayor power to create a vacancy by removal of an incumbent, where proper grounds existed for the purpose of, at once, without delay, putting a suitable person in the office, no confirmation by the board of aldermen being required in such case. But where a vacancy existed by the expiration of term, the legislature did not intend that the legislative branch of

the city government should be deprived of the right to disapprove of the nominees of the mayor.

It has been urged that in case the board of aldermen would not confirm the nominees of the mayor, then the mayor would be entirely powerless to relieve the city from the dereliction of duty of a hold-over officer. The answer to this suggestion seems to be that the law supposes that when the mayor makes a suitable nomination the board of aldermen will confirm, and that if one nomination is rejected others will be sent in for action. This intention is clearly expressed by the provisions requiring the mayor to nominate to the board of aldermen in case of expiration of term within ten days after such expiration. The making a nomination within the ten days, and after its rejection making no other, may fulfill the letter of the law, but does not comply with its spirit.

It seems to have been the intention that the mayor should endeavor to fill the office after an expiration of term within a reasonable time, and the making of one nomination without following it by a single other nomination, does not seem to be a very hearty endeavor to comply with the evident spirit of the statute. It is urged by the learned counsel to the corporation that it has been repeatedly held that officers *de facto*, if not such *de jure*, are liable to the penalties imposed by statute for malfeasance in office and consequently Mr. Wheeler is liable to the penalties imposed by section 25 of the charter, as he exercises the duties of the office and enjoys its emoluments. It is undoubtedly true that Mr. Wheeler is liable to all the penalties imposed by statute upon delinquent officers, and he could be indicted and convicted if a proper case existed ; but this fact does not make him liable to a peculiar method of procedure applicable only to a person whose term of office has not expired, and which procedure is for the purpose of creating a vacancy where one does not exist. I am clearly of the opinion, therefore, that the legislature never intended to give the mayor the power to remove a hold-over officer: Firstly, because as the removal of an officer was authorized to

cause a vacancy, and, when a vacancy already existed there was no reason for the conferring of the power. Secondly, because, if a hold-over officer is removed there is no method by which the office can be filled which, if pursued, would not of itself have operated as a removal of such hold-over officer. Thirdly, because, the legislature has imposed a penalty upon an officer removed, which cannot, under any circumstances, apply to a hold-over officer.

The remaining proposition is as follows: If the mayor has no power to remove Mr. Wheeler, will a writ of prohibition lie to prevent him from attempting such removal? In the case of *Quimbo Appo* agt. *The People* (20 *N. Y.*, 531), judge SELDEN defines the nature and office of the writ as follows: " The office of this writ is to restrain subordinate courts and inferior judicial tribunals of every kind from exceeding their jurisdiction. It is an ancient and valuable writ and one the use of which in all proper cases should be upheld and encouraged, as it is important to the due and regular administration of justice that each tribunal should confine itself to the exercise of those powers with which, under the Constitution and laws of this state, it has been intrusted    *    *    *.    It is true that the most frequent occasions for the use of the writ are where a subordinate tribunal assumes to entertain some cause or proceeding over which it has no control. But the necessity for the writ is the same where, in a matter of which such tribunal has jurisdiction, it goes beyond its legitimate powers; and the authorities show that the writ is equally applicable to such a case. Mr. Jacob, in treating of this writ, after saying that it may issue to inferior courts of every description, whether ecclesiastical, temporal, military or maritime, whenever they attempt to take cognizance of causes over which they have no jurisdiction, adds: " Or if, in handling of matters clearly within their cognizance, they transgress the grounds prescribed to them by the laws of England, as where they require two witnesses to prove the payment of a legacy " (*Jac. Law*

*Dic., title Prohibition*). After quoting from authorities, he continues: "This shows that the writ was never governed by any narrow technical rules, but was resorted to as a convenient mode of exercising a wholesome control over inferior tribunals. The scope of this remedy ought not, I think, to be abridged, as it is far better to prevent the exercise of an unauthorized power than to be driven to the necessity of correcting the error after it is committed." The language of this opinion clearly indicates that the mere existence of some other remedy does not deprive the relator from preventing the exercise of an unauthorized power by an inferior tribunal; and this was one of the questions directly raised in the case cited. To the same effect is the case of *Sweet* agt. *Hulbert* (51 *Barb.*, 312).

In England it would seem that the writ is no longer looked upon as discretionary, but that it is a writ of right, in a case where the proper facts for its issuance are presented.

In the case of the *Mayor of London* agt. *Cox* (2 *L. R. H. L. Cases*, 239), it is said: "The writ of prohibition at the suit of a party is not, as it was thought to be by some eminent judges at the close of the seventeenth century, in the discretion of the court." And at page 278, the law upon this question of discretion is thus stated in the judgment of the court of queen's bench in *Bender* agt. *Vealy* (12 *A. D. & E.*, 263), "that if called upon we are bound to issue our writ of prohibition as soon as we are duly informed that any court of inferior jurisdiction has committed such a fault as to found our authority to prohibit, though there may be a probability of correcting it by appeal."

But if such were not the rule, the reversal of a removal of Mr. Wheeler upon the ground of a want of jurisdiction would not restore him to the same position he occupied before removal. The court of appeals in such a case would pass simply upon the question of jurisdiction, leaving the merits of the case untouched, and the relator would have to bear the stigma of a conviction by an officer entirely

without authority to take cognizance of his alleged delinquency, and which conviction there would be no possible method of review. It was further urged upon the argument of this motion that the writ should not issue because no plea to the jurisdiction has been overruled, and it is not to be presumed that the mayor will assume jurisdiction when that plea is taken. This objection probably applies only to cases where the inferior tribunal has, upon the face of the record before it, jurisdiction of the case.

And the questions which it has not jurisdiction to try arises in the course of the proceedings (*De Habel, Queen of Portugal*, 17 *B.*, 171; *Mayor of London* agt. *Cox, supra*).

But even if this were not so, the reason of the rule would be that it is not to be presumed that the inferior tribunal will overrule the objection to its jurisdiction when it is taken. This would undoubtedly be ordinarily true, but in the case at bar the mayor has overruled the very objection in a case entirely parallel and the preferring of the charges in this case indicated his belief that such previous ruling was correct. In such case, as the reason of the rule certainly fails, the rule itself has no application.

In the discussion of the remaining branch of this proposition we are met with much greater difficulties than have been encountered in consideration of the other questions involved in this case. A large number of authorities have been cited showing that under certain circumstances a writ of prohibition will issue, but no case can be found where the powers to issue such a writ has been denied, where the officer to whom it was directed has been held to act judicially. The uncertainty which surrounds the solution of the proposition under consideration depends largely upon the standpoint from which it is to be discussed. If we are to assume that the province of a writ of prohibition is to be restricted to the limited office which it served when first introduced, one might perhaps come to a different conclusion from that to which I have arrived, but when we consider how the province

The People *ex rel.* Wheeler agt. Cooper.

of a kindred writ — that of *certiorari* — has been enlarged; when we remember that the office of the writ of prohibition was to prevent the making of a record because of want of jurisdiction and the office of the writ of *certiorari* to bring up the record, as made, for review, there seems to be no reason for supposing that where, upon a writ of *certiorari*, a proceeding would be reversed for want of jurisdiction, a writ of prohibition will not lie to prevent the usurpation of that jurisdiction. The writ of *certiorari* is a writ very common in our courts, and the adjudications are consequently quite numerous, giving us quite well defined ideas of the cases in which it can issue, and the office which it performs, when issued. The writ of prohibition is comparatively rare, and it is greatly to the credit of our inferior tribunals that it is rare, as this fact indicates that our inferior tribunals have been careful not to usurp doubtful jurisdiction. Much has been said about the statute of this state respecting writs of prohibition.

2d Revised Statutes, 587, section 61. — A writ of prohibition shall only be issued out of the supreme court, and hereafter such writs shall be applied for upon affidavits, by motion, in the same manner as writs of *mandamus*. And if the cause shown shall appear to the court to be sufficient, a writ shall be thereupon issued, which shall command the court, and party to whom it shall be directed, to desist and refrain from any further proceedings in the suit or matter specified therein until the next term of the said supreme court and the further order of such court thereon   *   *   *.

§ 62. Such writ shall be served upon the court, and party to whom it shall be directed, in the same manner as a writ of *mandamus ;* and a return shall, in like manner, be made thereto by such court, which may be enforced by attachment as hereinbefore provided.

It has been strongly urged that this language of the statute is entirely inconsistent with the idea of a writ of prohibition issuing otherwise than to a court and party. It is to be

observed that the statute nowhere defines what a writ of pro-hibition is. It nowhere prescribes what facts must be before the court to authorize its issuance. It contains not a single restrictive word, except that the writ shall only be issued out of the supreme court, and then proceeds to regulate the prac-tice. The statute says that "a writ shall thereupon issue, which shall command the court and party to whom it shall be directed to desist," &c. And again, "such writs shall be served upon the court and party," &c. If the strict wording of a statute as to the practice is to control the nature of the writ, then, unless there is a court and party both, the writ cannot issue. It does not seem to me that such a position can be for a moment upheld. Suppose an inferior court, upon its own motion, initiates proceedings for contempt against a person in a case in which it had no jurisdiction, could not the party proceeded against sue out a writ of prohibition? Would not such a writ subserve the very purpose for which this writ was framed? And yet there would be no party to which the writ could be directed or upon whom it could be served. It could only be directed to the court and served upon the court (*Sweet* agt. *Hulbert*, 51 *Barb.*, 312).

The office of the writ of prohibition, therefore, it seems to me, cannot be restricted by resorting to a statute simply regu-lating the practice upon its issuance, which statute nowhere pretends to or intends to define the cases in which it may be resorted to. A large number of authorities have been cited to show that a writ of prohibition can only issue to a court commonly known as such, but upon examination it will be found that in not one of these was it necessary to decide any such proposition.

The case of *The People* agt. *Supervisors of Queens* (1 *Hill*, 198), simply decides that a writ of prohibition will not lie to a ministerial officer to stay the execution of process (*Ex parte Brandlacht*, 2 *Hill*, 367). "Prohibition will not lie to an inferior court to restrain the issuing of an execu-tion. This is a *ministerial* and not a judicial act."

*In the Matter of Neslin* agt. *Dowling* (46 *How. Pr.*, 7), all that was decided in that case was that " neither the board of police justices nor its members could be restrained by a writ of prohibition from the performance of duties imposed by law.

*Buck, Mayor,* agt. *Hardwicke* (23 *Grattan,* 51), a writ of prohibition in that case was refused, " because the mayor of a city in investigating the acts of a city officer, and suspending or removing him for misconduct, in office, does not sit as a judicial tribunal, but simply as an executive officer, administering the government of the city in respect of which there is no remedy by prohibition this being a remedy which applies exclusively to courts."

I shall endeavor to show hereafter, under the decisions of the courts of this state, that the mayor, in removing heads of departments, does act judicially and not act as an executive officer.

The case of *State* agt. *Gay* (33 *Wis.*, 93) ; *Cody* agt. *Leonard* (45 *Ga.*, 85) ; *Greir* agt. *Taylor* (4 *McCord.*, 206) ; *Clayton* agt. *Heidelberg* (17 *Miss.*, 623) ; *State* agt. *Clark, Co. Court* (41 *Mo.*, 44), were all decided upon the ground that a writ would not lie against an executive or ministerial officer.

In the case of the *People* agt. *Stout* (11 *Abb.*, 17), the court held that as the mayor and board of aldermen had the discretionary power of removal the courts would not interfere, but the court, in that case, more than intimated that the exercise of the power of removal was so far the subject of judicial review that the court should see that a cause was assigned. Upon the principal point decided, this case has been overruled, by the case of the *People ex rel. Munday* agt. *Fire Commissioners* (72 *N. Y.*, 445).

In *Thompson* agt. *Tracy* (60 *N. Y.*, 31), all that was decided was that a writ of prohibition does not lie to restrain a ministerial act, nor can it take the place of a writ of error or other proceeding to review judicial action or of a suit in equity to prevent or redress fraud and that the court of

appeals was not a court inferior to the supreme court and that the former court was fully competent to regulate its own practice and determine its jurisdiction without any aid from the latter.

No case has been produced which holds that a writ of prohibition will not lie against any official acting judicially. An examination of the definition given by the early and later writers to the writ of prohibition and to the writ of *certiorari*, will, I think, demonstrate that the words "inferior courts" in both refer to the same class of tribunals.

In Bacon's Abridgment, under title "Prohibition," the following definitions of the purpose and scope of the writ are found : "As all extraordinary jurisdiction, whether ecclesiastical or civil, is derived from the crown, and the administration of justice is permitted to a great variety of courts, hence it hath been the care of the crown that these courts keep within the limits and bounds of the several jurisdictions prescribed them by the law and statutes of the realm, and for this purpose the writ of prohibition was found and which issues out of the superior courts of common law to restrain the inferior courts whether such courts be temporal, ecclesiastical, maritime, military, &c., upon a suggestion that the cognizance of the matters belong not to such courts ; and in case they exceed their jurisdiction, the officer who executes the sentence, and in some cases the judge that give, are in such superior courts punishable, sometimes at the suit of the king, sometimes at the suit of the party, sometimes at the suit of both, according to the nature of the case.

In the same work the definition of *certiorari* is in the following words :

"A *certiorari* is an original writ issuing out of chancery or the king's bench, directed, in the king's name, to the judges or officers of inferior courts, commanding them to return the records of a cause, depending before them, to the end the party may have the more sure and speedy justice before him or such other justices as he shall assign to determine the cause."

In both cases the language is almost identical in respect to the tribunal to which the writ is directed.

In the 5th volume of Waite's Practice, 455, the writ is defined as follows: " The writ of *certiorari* at common law is a writ issued out of chancery, or out of the court of queen's bench or some other of the queen's courts at Westminster, for the purpose of removing some cause, suit or proceeding from an inferior to a superior court, either for the purpose of examining into the legality of the proceeding, or annulling or quashing an order or judgment of such inferior court given in the matter over which the court had no jurisdiction, or for the purpose of giving a defendant, sued in such inferior court, surer or more certain justice before a higher tribunal." The court of appeals in *The People ex rel. Schuylerville and Upper Hudson Railroad, Betts and others, Commissioners* (55 *N. Y.*, 621), say : " The office of the common law writ of *certiorari* is in strictness, merely to bring up a record of a proceeding of an inferior tribunal to enable the court of review to determine whether the former has proceeded within its jurisdiction, and not to correct a mere error in its proceeding" (*People ex rel.* agt. *The Commissioners of Highways*, 30 *N. Y.*, 72). True, it has been sometimes intimated and sometimes held that in the absence of any other remedy to prevent the failure of justice the party will be suffered by it to bring up not only the naked question of the jurisdiction, but the evidence as well as the ground or principles on which the inferior body acted, and the question of law on which the relator relies. Judge COWEN in his elaborate and carefully considered opinion in the matter of *Mount Morris Square* (2 *Hill*, 14, 21), discussing the office of the writ of *certiorari*, says : " But in order to warrant our interference in this form the act must be plainly judicial. The writ lies to inferior courts only, and even then, if the act be merely ministerial, the writ will not lie." At common law writs of prohibition were not always directed to any court, but were frequently addressed to the judge of the inferior court (*Blackstone's Commentaries*,

*Book* 3, *page* 112). The language used in defining the tribunals to which writs of *certiorari* can issue is thus seen to be just as restrictive as any which has been applied to writs of prohibition, and yet we find that our court of appeals has frequently upheld writs of *certiorari* addressed to executive and to ministerial officers where they have been called upon, in the exercise of their office, to act judicially. It is suggested by the learned counsel to the corporation that it is a well known, thoroughly recognized fact that by innovation upon the common law the writ of *certiorari* has been extended in later times far beyond its common law provisions, and that chief justice CHURCH has said, in the case of *The People* agt. *The Board of Police* (69 *N. Y.*, 411): "The office of a common law *certiorari* has been much enlarged by the later decisions of this state. It is also as equally well known that the necessity for this extension has arisen from the creation by statute of a large number of irregular tribunals, such as assessors, commissioners, &c., who act in the discharge of their duties both judicially and ministerially, and whose judicial acts could be reviewed in no other way than by writs of *certiorari*. These irregular tribunals constitute, where they act judicially, inferior courts within the meaning of that term as it was understood at the time the writ was established.

In the case of *Sweet* agt. *Hulbert* (51 *Barb.*, 312), a writ of prohibition was issued to a county judge alone, prohibiting him from making the appointment of certain commissioners which by a statute it was his duty to appoint under his hand and seal, upon the ground that the law imposing the duty was unconstitutional. The writ was upheld on the ground that the action of the county judge was judicial.

I am of the opinion, therefore, that upon principle, there being no authority to the contrary, in every case where an officer is authorized by law to act judicially in the determination of any question, if he usurps jurisdiction prohibition will lie. Does the mayor act judicially in removing heads of departments for cause? The provision of the charter giving

the mayor power to remove is as follows: "The heads of all departments     *     *     *     may be removed by the mayor for cause, and after opportunity to be heard." The language of this section clearly indicates that the cause was not intended to be merely political, because the history of politics in this country shows that where the executive has the discretionary power of removal a difference in political opinion has long been regarded as sufficient cause for removal. There must be some substantial, reasonable and just cause. Such cause must not only be alleged, but must exist.

In the case of the *People ex rel. Munday* agt. *The Commissioners* (72 *N. Y.*, 445), this very question was passed upon by the court of appeals. The relator was clerk in the office of the fire department of the city of New York. A notice was served upon him requiring him to show cause why he should not be removed; no cause for the proposed removal was stated. The relator appeared and asked to be informed of the cause of removal. None was stated and he was never informed of any cause for removal, but the board requested him to show cause why he should not be removed. The board passed a resolution that the relator, not having given satisfactory reason why he should not be removed, be discharged. After the issuance of the writ of *certiorari*, the cause for removal was stated to be, that in the opinion of the board of commissioners the duties pertaining to the position can be more efficiently performed by another person.

Section 28 of chapter 335 of the Laws of 1873, provides for the appointment and removal, by heads of departments, of all chiefs of bureaus (except the chamberlain) as also clerks, officers employes and subordinates in their respective departments and declares:

"But no regular clerk or head of a bureau shall be removed until he has been informed of the cause of the proposed removal and has been allowed an opportunity of making an explanation." The general term of this court on *certiorari* reversed the action of the board of fire commissioners in

removing Munday from office and the court of appeals sustained such reversal.

Judge ALLEN, who delivered the opinion of the latter tribunal, said : " The removal must be for cause and the process of removal is prescribed by statute and must be pursued. The party against whom the proceeding is taken must be informed of the cause of the proposed removal and be allowed an opportunity of explanation. This necessarily implies that the cause is to be some dereliction or general neglect of duty or incapacity to perform duties or some delinquency affecting his general character and his fitness for office. The cause assigned should be personal to himself and implying an unfitness for the place, and such cause being assigned if unexplained the removal may be made. An explanation may consist of either excusing any delinquency or apparent neglect or incapacity— that is explaining the unfavorable appearances or disproving the charges ; that some other man is a better man than the accused or more congenial to the appointing or removing power, is not a cause which the incumbent can explain in the sense in which that term is used, and is no cause for removal within the statute. That something substantial is intended by the statute is more evident from the fact that the true grounds of the removal are to be entered upon the records and a statement showing the reason therefor filed in the department."

In respect to the second order of removal the learned justice says : " The proceedings and order are not in conformity with the statute as neither directly or by implication is there any cause alleged for the removal affecting the character, conduct or fitness of the relator which he could explain, but they merely shadow forth a preference of a majority of the commissioners for some other person not named. So long as the relator fully and satisfactorily performed his duties and is qualified in all respects and is of irreproachable character (and nothing to the contrary is alleged), the fact that the series of one of a higher grade of

The People *ex rel.* Wheeler agt. Cooper.

qualification, in the opinion of the commissioners, could be secured for the place, is no 'cause' for removal."

The power of the mayor to remove is for cause, after an opportunity to be heard. What does the opportunity to be heard necessarily imply? First. That the party to be removed shall be informed of the cause, because he must know what he is to be heard about; and, secondly, that he shall have the right to prove by witnesses that the cause does not exist; and if he proves that, the mayor has no power to remove, if the decision of the court of appeals in the case of Munday is the law. And to the like effect is the opinion of judge WOOD-RUFF in the case of *Cooke* agt. *The Police Department* (39 *N. Y.*, 506). And this necessarily leads to the conclusion that the mayor may rebut, by evidence, the proof offered by the party sought to be removed, and, upon the whole of the evidence thus offered, the mayor must find, in order to entitle him to remove, as matter of fact, that the cause alleged exists; and, what action is this of the mayor but judicial action? His act of removal is undoubtedly ministerial, but his determination of the existence of the cause for removal is nothing but judicial. But, it is urged, the power of removal given to the mayor was intended to be summary in its nature, and a procedure such as has been indicated involves all the procrastination of a trial. This may be true, but if the statute means anything it means all this. The giving a party a right to be heard could never have been intended to have confined his hearing to the personal denial of the charges preferred, because this would be mere mockery. The legislature never could have intended to have inflicted the penalty of disfranchisement without allowing a party to prove his innocence of any dereliction of duty. A party who is entitled to a hearing is entitled to speak upon that hearing, in the only way which could in many cases be at all effective, viz., by the mouths of credible witnesses testifying to the falsity of the charges against him. It seems to me conclusively established by the court of appeals, in the cases already quoted, that the mayor

and governor are not the sole judges of the sufficiency of the cause, and that a power to review their action exists. It is conceded that under the charter the alleged cause of removal must be some dereliction of duty upon the part of the officer sought to be removed, and that such cause must exist in fact. If the removing powers are alone to be the judges of the sufficiency of the cause and its existence, and there is no appeal from their determination, then the statute pretending to throw any safeguard around tenure of office is a hollow device and a sham; because a removal could actually be made at the will of the removing power, notwithstanding the restrictions of the statute. It is true that in the case in the 23d Grattan above referred to, arising under a statute very similar to the one under consideration, the court held that the mayor in making removals acted only in an executive capacity; but the course of decisions in this state has been to the contrary, as is demonstrated by the cases cited, and to the effect that the action of executive officers, when called upon to determine the existence of facts, is judicial, and is the subject of review.

It follows, therefore, that as the mayor has no power to remove Mr. Wheeler, that as, in passing upon the existence of a sufficient cause for removal, the mayor acts judicially, and that as a writ of prohibition will lie in the case of an officer acting judicially who exceeds his jurisdiction, the writ in the case at bar must be made absolute.