## Levi F. Stockwell v. The Township Board of White Lake.

*Township boards: Summary proceedings: Interested party.* An application to the township board to remove the moderator of a school district, on the ground that he persistently refuses to countersign an order drawn by the director of the district on the assessor, involves an inquiry, in which the payee named in the order is an interested party.

A proceeding before the township board to remove an officer of a school district, is in the nature of a judicial investigation; and when one of the board is interested in the subject of the complaint, and the presence of such member is essential to the quorum, the proceedings are void.

When either of the members of the township board, as constituted under § 562, Comp. Laws, is interested in the subject for consideration, he is not "competent or able to act" in the sense of § 563; and such incompetency will justify the calling in of one of the remaining justices.

Every special tribunal appointed by law is subject to the maxim, that no person can sit as a judge in any cause in which he is a party, or in which he is interested.

STOCKWELL *v.* THE TOWNSHIP BOARD OF WHITE LAKE.

*Moderator of school district: Countersigning orders.* It is not necessarily the duty of a moderator of a school district to countersign an order upon the assessor, drawn by the director. He has a right to satisfy himself that the claim for which it was drawn is a valid one, and that it was drawn by the director in the proper performance of his duty.

*Costs against township officers.* Costs awarded by this court in a proceeding by *certiorari*, against persons composing a Township Board, to review their official acts, are to be collected like Township charges,—§ 4917. *Comp. Laws,*—and not by execution against the officers personally.

*Heard January 9.   Decided April 5.*

*Certiorari*: To the Township Board of White Lake to review the proceedings for the removal of Levi F. Stockwell from office as moderator of school district No. 4 of the Township of White Lake.

*W. B. Jackson* and *A. C. Baldwin,* for plaintiff in error.

*Crofoot & Brewer,* for defendants in error.

GRAVES, J.

The writ in this case brings before us the proceedings by the township board of White Lake, for the removal of the plaintiff in error from the office of moderator of school district No. 4 in that township. It appears by the record that sundry proceedings had occurred in the district, relating to the building of a new school-house, and which were at length claimed by some, and denied by others, to have resulted in a valid resolution to erect the house. A resolution was entered upon the records appointing the director, William B. Stockwell, and a Mr. Worden a building committee; and those persons, as such committee, entered into a contract with Charles Porter to put up the house, and with Mr. Burwell to make the foundation wall. Subsequently, and on the 29th of July, 1870, William B. Stockwell, as director, drew two orders upon the assessor of the district, a Mr. Armsby, who then had the money,—one of which called for the present payment of one hundred dollars to Charles Porter, and the other for the like pay-

ment of fifteen dollars to Mr. Burwell, out of the building fund. The plaintiff in error being at this time the moderator of the district, the orders in question were, on the day of their date, presented to him to be countersigned by the director, in order that Porter and Burwell might immediately draw the money. But the plaintiff in error, denying the right of Porter and Burwell to the money, refused to countersign the orders.

Mr. Porter, the contractor and payee in the large order, being clerk of the township of White Lake, the building committee man and director, William B. Stockwell, who drew the orders, filed with Porter, on the 8th of August, a complaint to the township board against the plaintiff in error, for persistently refusing and neglecting, without sufficient cause, to discharge the duties of his office. The complaint set forth the refusal to countersign the orders to Porter and Burwell as the breach of duty complained of, and prayed that the board would remove the plaintiff in error from his office of moderator for such delinquency. Porter, as township clerk, thereupon notified the plaintiff in error that the township board would meet at his office, on the 10th of August, " to hear said complaint, and to take proofs and determine the charges therein mentioned." The board met at the time specified, at the office of Porter, but was then found to consist, as it did throughout the entire proceedings, of but three sitting members,—of whom Mr. Porter was one. The plaintiff in error seasonably and distinctly objected that Mr. Porter was not qualified to sit in that case; but the objection was overruled, and the board so constituted, of Porter and two others, heard the proofs and allegations, and determined in effect that the plaintiff in error, as moderator of the district, in refusing to sanction the payment at the time to Porter and Burwell, had persistently refused and neglected, without sufficient cause,

to discharge his duty, and should be removed from his office in consequence.

The validity of this proceeding by the board is assailed on several grounds. The plaintiff in error contends,—first, that Porter was incompetent to act as a member of the board upon the trial of the matter involved in the complaint; and, second, that the judgment of amotion was not warranted by the facts. The ground of objection first mentioned is naturally in order to be first considered, since, if it be well founded, it is necessarily fatal to the action of the board, whether the judgment of removal in the abstract was correct or otherwise upon the evidence. On referring to the record it appears that in all the proceedings before the board the alleged delinquency of the moderator, was founded upon his disapproval of the payment of the two orders, and that the judgment of amotion was rested upon the evidence of breach of duty supposed to be furnished by the double refusal. The judgment being single, and grounded upon the two facts as explained by other evidence, we are not at liberty to assume that either of these facts, with its concomitant circumstances, was deemed unessential to the result; and therefore, if Porter was disqualified from sitting to try the charge as it stood upon the refusal to sanction his order, it was fatal to the judgment, though it be admitted that he was a lawful trier on the other specification.

Under these circumstances we may dispense with any special reference to the refusal to countersign the Burwell order, and for the purpose of the present point proceed to examine the case as though the refusal to assent to the Porter order was the only overt act set forth. The validity of the maxim, that no one can be a judge in his own cause, is not controverted, nor, indeed, can be. It is among the first objects of civil government, to deprive persons of

the power to adjudge finally for themselves, and conclusively assert their own causes; and so fundamental is this rule of justice, so essential to the order, peace, and even stability of government, that however broad the terms of a grant of judicial power may be, this principle remains operative, and gives rise to a tacit exception from the general words of the grant.—*The Peninsula Railway Co. v. Howard*, *20 Mich., 18.*

The principle has found express recognition in our statute, which declares that "no judge of any court can sit as such in any cause in which he is a party, or in which he is interested," ( § *4064, Comp. L.*), and although the board may not be considered as having technically constituted a *court* within the meaning of this act, the principle itself, which derives no aid from legislation, extends beyond the words of the statute, and asserts itself wherever judicial powers are employed by a body appointed by law. The members of the board in this case, when acting on the complaint of the director, were proceeding judicially, and exercising some of the most important functions peculiar to a court.

They were sitting to hear the altercations and evidence of opposing parties in a real controversy, by authority of law, and were required to decide finally the issues involved in that controversy. Being in the exercise of judicial functions, under such authority, they were as completely subject to the principle alluded to as though they had formed a court in full legal sense. The defendants in error do not controvert this position, but rest their objections to the operation of the rule in this case upon other grounds. They insist, in the first place, that Porter, the member of the board objected to, was neither a party nor interested, and, in the second place, that his participation was necessary in order to form a quorum. Now, it is quite true that Porter was

not a nominal party to these proceedings, but that circumstance is not decisive, since the rule is not confined to cases where the person is both judge and party. The principle in question reaches far beyond the forms which envelop the litigation, and applies to the elements and substance of the controversy, and in general, where the case is of such a nature as to make it necessary, in its course or final issue, for the trier to pass upon his own implicated rights or interests, the rule attaches and unseats him. The exceptions made by some authorities, of cases referred to interested umpires by agreement of parties, and of cases where formal judgments are given by interested judges, as necessary steps to secure the action of other courts, do not require to be noticed, since the case before us is not within them. In proceeding to ascertain whether Porter was interested in the case before the board, it is proper to bring into view the nature of the issue, which was then to be tried, together with the judgment which the case admitted and its consequences, and, as already intimated, it is necessary to go beyond the mere shell of the controversy, and consider it in its essence, substance and effect. A building fund had been accumulated in the district treasury, of two hundred dollars. Mr. Porter had a claim of one hundred dollars against the district for building, and the director decided in effect that this was a valid claim and debt against the district, which was presently due and payable out of the fund. This decision of the director was requisite to enable Mr. Porter to at once draw the money. But the assent of another officer was made by law a pre-requisite to his drawing the money. For, with the determination of the director in his favor, he could not succeed without the assent of the moderator, and this officer, on being applied to, peremptorily dissented, and accordingly became the sole obstacle to Porter's obtainment of the hundred dollars at once. Such

was the intrinsic sense and meaning of what occurred, and it cannot be obscured by the legal forms which were employed.

The existence of Porter's claim, however valid in the abstract, was not of a nature to preclude all right of inquiry and estop the district in advance from making any denial of its legality or of the right of the claimant to immediate payment out of the treasury. The demand was upon a contract between Porter and the district, and in legal contemplation the subject was open to dispute and legal investigation. By drawing the order and pressing the moderator to countersign it, the director inclusively decided the whole matter in favor of Porter, and against the district, in so far as he could do so, and whether correctly or otherwise is of no moment in the view in which the matter is being examined now. The moderator disagreeing with the director in his decision in favor of Porter, the board, of which the latter was a member, were asked to remove the moderator on account of his disagreement, and when the body convened for the purpose, with Mr. Porter as a member, proceeded to investigate and pass upon the questions raised by the complaint; they examined and considered the proceedings of the district in reference to building, the contract with Porter, and the nature and validity of his claim, as well as the drawing of the order by the director, and the refusal of the moderator to countersign it.

They did not confine their investigation to the facts that the district was in possession of a building fund of more than one hundred dollars; that the director drew the order, and that the moderator refused to countersign it.

In reference to this feature of the case, an argument is made, however, to support the judgment of the board, which plainly assumes that in going beyond these latter facts they exceeded the exigencies of the inquiry. That argument is,

that the drawing of the order, by the director, in favor of Porter, and its presentment to the moderator to be countersigned, made it the fixed legal duty of the latter to approve it, or in other words, to allow the money to be paid, and that the refusal of the moderator was a violation of his official duty, and a valid cause for his removal.

But, in order to maintain this position, it is necessary to contend that the action of the director was not only conclusive upon him, in favor of Porter's right to draw the money immediately, but was so conclusive and binding upon the moderator as to leave him no option or discretion, and further that defendants in error, in whose behalf this reasoning is made, departed from the issue and exceeded the requirements of the case, when they examined the validity of the demand covered by the order, the time for payment and the propriety of the draft against the specified fund.

The argument, however, is untenable, and the action of defendants in error is not open to the exception thus taken by counsel in their behalf.

The law is not intended to require the moderator to countersign an order without regard to the justice, maturity, or validity of the demand and on the simple ground that the director has made the draft and solicits its approval. It was not designed, as the argument implies, to oblige the moderator to give effect to an order having its inception in the violation of duty by the director; nor was it designed to preclude the moderator from the exercise of an honest judgment upon it whether an order had so originated. Yet the conclusion contended for by defendants in error, would involve an opinion that the Legislature meant to make it the absolute duty of the moderator to countersign an order positively known to him to cover a fraudulent or otherwise illegal demand. The spirit of the statute is wholly different. In requiring the moderator to countersign, the Legislature

provided for the concurrent action of two officers, and thereby intended to secure mutual checks against dishonesty and improvidence, and this legislative purpose presupposes that the moderator may and will, in good faith and with proper care, go behind the order and judge for himself in the interest of the district, whether the claim is a valid one and regularly payable as indicated by the terms of the order.

Having ascertained that the refusal to countersign could not alone be sufficient to support the charge made to the board, or cover the ground of inquiry and judgment contemplated by the statute, we may assume for the present case that the persistent refusal to countersign an order may or may not be a ground for amotion, according as it appears, whether or not it was wholly without excuse and in violation of the trust confided to the officer. And making this assumption it is evident that the surrounding and connected facts required to illustrate the act and explain its real character, must be an indispensable part of the inquiry and within the issue. The validity of the claim, and the right of the claimant to payment according to the terms of the order would, therefore, be directly involved. For it could not be taken for granted, against the moderator, on a trial to impeach him for an unlawful refusal to countersign an order, that the demand was such that he should have countersigned the order for its payment. The defendants in error, as we have seen, acted accordingly and investigated the proceedings of the district, including Porter's contract, and examined his claim in order to ascertain and decide whether or not it was valid and payable as indicated by the order.

Mr. Porter was therefore sitting in judgment upon the validity of his own demand and his right to immediate payment on an order already drawn in his favor.

But this is not all. The proceeding had for its object the removal of the plaintiff in error for persistently standing in the way of the payment of the demand to Porter on the order already issued. Mr. Porter was then also sitting to decide whether in consequence, or partly in consequence, of the refusal to allow him to draw the one hundred dollars, a judgment should not be rendered removing the plaintiff in error from office, and implying in the clearest manner that a future refusal by a new moderator would be ground for his removal.

Such being the predicament of the case, Mr. Porter was, certainly, so interested in the questions to be investigated and passed upon, and in the consequences to flow from the final judgment, as to bring him within the rule which forbids a person to sit in judgment upon his own rights, claims and pretensions.

But if this were less obvious, the court ought not to be astute to discover refined and subtle distinctions to save a case from the operation of the maxim, when the principle it embodies bespeaks the propriety of its application. The immediate rights of the litigants are not the only objects of the rule. A sound public policy, which is interested in preserving every tribunal appointed by law from discredit, imperiously demands its observance.

The last proposition of defendants in error on this branch of the case may be readily answered. In effect it confesses, for the purpose of the argument, that Porter was interested, and suggests by way of avoidance of the objection based on that circumstance, that a quorum of the board could not be had for the trial in his absence, and that, therefore, he was a necessary trier. If it should be admitted that in order to organize the board for the trial of the charge against the moderator, it was necessary for Mr. Porter to act with it, it cannot be conceded that such

necessity would be a sufficient answer to the objection founded on his interest. The case, however, does not require a decision upon that point.

It is provided by § *562, Comp. L.,* that the township board shall be composed of the supervisor, the *two* justices of the peace whose term of office will soonest expire, and the township clerk, and that any three of such officers shall constitute a quorum.

Anticipating, however that occasions might arise when no three of those officers would be able or qualified to sit, the Legislature made provision for such a contingency in the next section, which reads as follows: "When, *from any cause,* there shall not be three of the officers constituting such board, competent or *able to act,* one of the *remaining justices,* on being notified by any member of said board, shall meet with any members of the board, and shall *have the same authority* as the other members of the board."

Now it cannot escape attention that the Legislature, in providing for calling one of the other justices to sit in place of an incompetent member of the regular board, were of opinion that no necessity would make a regular member *competent,* who would otherwise be incompetent. Because it cannot be presumed that this remedy for such a contingency would have been provided, when without it the difficulty would have found its own cure in the *necessity* for a board, when business should require one. But a different answer to the view of defendants in error may be given When the act for the organization of the township of White Lake was approved on the 23d of March, 1836, the law in force required each organized township to elect four justices of the peace, and provided for their classification and for subsequent elections so as to continue that number in office.—*Sess. L. 1836, p. 16.* The general legislation bearing on that subject, which has since taken place, has

always contemplated the right and duty of organized town-
ships to have four justices of the peace, and the townships
have generally conformed to this policy.

The instances when the number has fallen short of four
have been exceptional and occasional, by causes not affecting
the right and duty to preserve that number.    There is no
evidence in the record that the township of White Lake
had not four justices of the peace in office during the run-
ning of the proceedings under review, and no evidence that
from among the officers, contingently or otherwise, eligible
to the board, and who did not sit in this case, a disin-
terested and competent member could not be obtained in
the place of Mr. Porter.    It is therefore reasonable to pre-
sume that there were in the township at least three officers
eligible to the place, and at the same time unobjectionable
on the ground of interest, or any other disqualifying circum-
stance.    But there is a special infirmity in the case connected
with this topic.    The only foundation for the position of
defendants in error, that Porter's presence was necessary to
form a quorum, is a passage in the return that he stated
to his two associates on the board, " that he would be gladly
excused from sitting, but there would be no quorum without
him."   Now this was neither a ruling by the board, nor
evidence before it.   It was a naked declaration of the officer
to support his right to sit when challenged as incompetent,
and even then was no more than his own opinion respecting
the effect due to facts not stated.    The passage is, therefore,
properly no part of the record, and in strictness entitled to
no consideration here.    But if this expression should be
thought to merit notice, it could not be accepted as mean-
ing enough to support the argument based upon it.

The fair import of it is that but three of the regular
members being together, including Mr. Porter, there would
be no quorum then present unless he should sit.    The remark

did not exclude the practicability of getting a quorum without him, by calling another officer who was not present, and therefore, in the view in which it was made, it was inconsequent and immaterial.

In reaching the conclusion that Mr. Porter was incompetent to sit, and that his participation vitiated the proceedings, it is not intended to impute any wrong or immoral purpose to him. It is quite probable that his participation was distasteful to himself, and that he was moved to it by an honest though erroneous idea of official duty.

The length to which this opinion has been drawn can only be excused by a consideration of the importance of the principle involved, and the necessity there seems to be for a clear understanding that every special tribunal appointed by law is subject to the maxim which the Legislature has expressly recognized, and declared applicable to regularly constituted courts, and cannot escape its operation wherever the reason on which it rests dictates its application.

The view taken of the principal question makes it unnecessary to examine the other points in the case.

The judgment of the board must by quashed, and the plaintiff in error will recover his costs, to be taxed.

The other Justices concurred.

Subsequently,—May 9th,—*Crofoot* asked the direction of the court as to the issue of the execution for the costs awarded by this judgment;—whether it should run against the township, or against the members of the board, individually, who were respondents to the writ.

THE CHIEF JUSTICE. The costs are a township charge, and no execution need issue. It is only necessary that the amount should be certified to the proper township officer to be collected like other township charges.