John J. Speed v. The Common Council of the City of Detroit.

*Municipal corporations—City counselor of Detroit—Appointment by mayor—Revocation—Removal—Approval of bond—Mandamus.*

1. Act No. 419, Local Acts of 1893, vests in the mayor of the city of Detroit the exclusive power to appoint a city counselor, and when such appointment has been duly made and filed it is absolute, and beyond the power of the mayor to recall.

2. The appointee, upon filing his official oath, and upon the approval of his bond by the common council, is entitled to the possession of the office, and cannot be removed therefrom by the common council without notice and an opportunity to be heard.

3. Where after the appointment of a city counselor, and the taking by him of the oath of office, and the filing of a bond in due form, with sureties who justify their responsibility under oath, as required by the charter, the mayor attempts to recall said appointment, and makes a new one, for which reasons the common council refuses to approve the bond of the first appointee, and, on his refusal to surrender the office to the second appointee, assumes to remove him from said office without notice or an opportunity to be heard, *mandamus* will lie to compel the approval of the bond, notwithstanding the pendency of *quo warranto* proceedings against the second appointee, whose right to the office, if he has any, will be considered in said proceedings, when heard.

*Mandamus.*   Argued October 10, 1893.   Granted October 24, 1893.

Relator applied for *mandamus* to compel the respondent to approve his bond as city counselor.   The facts are stated in the opinion.

*John D. Conely* and *Hoyt Post*, for relator.

*John B. Corliss* (*Edwin F. Conely, Jasper C. Gates,* and *Charles Flowers,* of counsel), for respondent.

MONTGOMERY, J. On September 30 last, the relator filed his petition in this Court for *mandamus* to compel the respondent to approve a bond which relator had filed with respondent, as city counselor. An order to show cause was issued, and respondent's answer is now filed.

It appears from the petition that the relator is a resident and elector of the city of Detroit, and that on the 16th of January, 1891, he was appointed city counselor by the common council of said city, on the nomination of the mayor; that he took the oath of office and filed his official bond, which was approved by the common council, and thereupon entered upon the duties of said office; that at the session of 1893 the Legislature of this State passed an act entitled "An act supplemental to the charter of the city of Detroit, and to provide for a law department in said city," the second section of which provides:

"The city counselor shall be a practicing attorney, appointed as provided in this act. He shall have practiced his profession for at least five years, and shall devote his whole time to the duties of his office. He shall be appointed by the mayor on or before the third Tuesday in June, for the term of three years from the 1st day of July next succeeding his appointment."

That this act was approved by the Governor on June 1, and took immediate effect; that at this time the relator was in the office of city counselor for the term ending July 1, 1893; that on July 15, 1893, the mayor of the city executed and delivered to the relator an appointment to the office of city counselor, as follows:

"OFFICE OF THE MAYOR, }
"DETROIT, MICH. }

"In pursuance of an act entitled 'An act supplemental to the charter of the city of Detroit, and to provide for a law department in said city,' approved June 1, 1893, I have appointed and I do hereby appoint John J. Speed

city counselor of the city of Detroit for the term commencing on the first day of July, 1893.

"H. S. PINGREE,
"Mayor of the City of Detroit."

That the relator filed this appointment in the office of the city clerk on the same day it was made, together with his oath of office; that the act under which the appointment was made provides in section three that the city counselor shall, before entering upon the duties of his office, execute a bond to the city of Detroit in the sum of $5,000, with such sureties as the common council shall approve, conditioned for the faithful performance of the duties of his office; that, on July 18, the relator executed the bond required by the act, with two sureties, in the penal sum of $5,000; that upon the bond were indorsed the affidavits of the sureties, in which they severally deposed that they were worth in unincumbered property, not exempt from execution under the laws of the State, each the sum of $5,000 after the payment of his just debts, claims, and liabilities; that the bond was indorsed by the certificate of the city attorney that it was correct in form and execution; that this bond was filed on the day of its execution in the office of the city clerk, and by him transmitted to the common council, which referred the same to the committee on ways and means, and that this committee on July 25, 1893, reported to the common council in favor of the approval of the bond, which report was laid upon the table; that on July 18, 1893, the mayor communicated to the council that in pursuance of the act of June 1, 1893, he had appointed the relator as city counselor for the term commencing July 1, 1893; that, at a meeting of the council held July 25, it received from the mayor the following communication:

To THE HONORABLE, THE COMMON COUNCIL:

"*Gentlemen:* In compliance with the act supplemental to the charter of the city of Detroit, providing for a law

department, passed by the Legislature in 1893, and approved June 1, 1893, I notified your honorable body last Tuesday of the appointment of John J. Speed as city counselor of the city of Detroit under said act. Since said appointment said Speed has, by public utterance, placed the matters of the greatest importance to the city, now in litigation, in jeopardy, by, it seems to me, most unwise and uncalled-for interviews in the public press. His attitude, as thus fairly conveyed, seems hostile to the best interests of the community. While admitting the ultimate success of the present litigation, he questions the policy of the city, the motives of the officials, and advocates the interests of the defendants. In order to protect the people and maintain their rights thus far obtained in the courts, I have this day revoked the appointment of said John J. Speed as city counselor, and hereby give you notice thereof, and request your honorable body not to accept any bonds from said Speed, as required by the act aforesaid, for such office, as the same is now vacant.

"Very respectfully,
"H. S. PINGREE, Mayor."

That the report of the committee for the approval of the relator's bond was thereupon laid upon the table; and that on July 29, at a special session of the council, the mayor, by a communication then made, informed the council that he had appointed John B. Corliss city counselor, and requested confirmation thereof, and on motion this appointment was confirmed by the council.

The answer substantially admits the facts stated in the petition, except that it is denied that the committee on ways and means made any report in relation to the bond of the relator, or that any such report was laid on the table or indefinitely postponed, or that any other action was taken thereon. It is also denied that any affidavit or certificate indorsed on the bond was submitted to or examined by said committee. The respondent makes return that John B. Corliss has taken his oath of office and filed his bond, as required in the act, and sets forth that, on August 4, John B. Corliss demanded from the

relator the documents, papers, and cases in his hands belonging to the said city, which the relator refused to deliver, claiming that he was entitled to retain the same; that, upon this action being reported to the respondent, respondent passed the following resolution:

"*Whereas*, the common council, on the 29th day of July, A. D. 1893, on the nomination of the mayor, confirmed the appointment of John B. Corliss to the office of city counselor; and

"*Whereas*, said John J. Speed has refused to surrender the papers, documents, and legal cases in his possession to the legal officer of the city, claiming, by some legal technicality, a right to continue to hold said office:

"Therefore, *Resolved*, that, while not conceding the right of said John J. Speed to said office, but in order to prevent any further claim thereto, this common council, by virtue of the powers granted by the charter of the city of Detroit, do hereby, for reasons deemed sufficient and ample, remove said John J. Speed from the office of city counselor that he claims to hold, and hereby discharge him from all rights and duties thereof."

It is further averred by the answer that John B. Corliss entered into said office, and has done and performed all the duties and functions thereof, and has held, used, and exercised, and still does hold, use, and exercise, the said office of city counselor of said city of Detroit from thence hitherto, and also from thence hitherto the said Corliss has been by the mayor, controller, clerk, and common council thereof, by all the departments and boards thereof, and by the public generally, treated and recognized as and to be such city counselor; that during all the time last aforesaid all the acts of said John B. Corliss as such city counselor have been with the acquiescence of all the last said officers, aldermen, boards, and of the public generally. The answer further avers that during such time the said Speed has not been in said office of city counselor, and has not done or performed any of the duties or functions thereof, and has not been recognized, treated, or reputed

to be said counselor by any of said officers or by the
public; and that the said Speed, on August 18, 1893,
caused to be filed in this Court by the Attorney General
of the State an information in the nature of *quo warranto*
against said Corliss, in which it was alleged, among other
things, that the said Corliss, for the space of 15 days then
last past, had held, used, and exercised, and did then still
hold, use, and exercise, said office of city counselor, and
that the relator did sue and prosecute out of this Court a
writ of summons directed to said Corliss, requiring him on
September 8, 1893, to answer said information, which said
summons was duly served on said Corliss, and to which
said Corliss appeared, and that the said information is still
pending in this Court.

The contention upon the part of the respondent is:

1. That, under section 8 of chapter 7 of the charter of
the city of Detroit, all appointments of the mayor are
conditional, and not absolute, and that this section of the
charter was not repealed by the act of 1893.

2. That, even if this appointment had been absolute,
yet the relator, on July 25, had not qualified so as to
entitle himself to the office; therefore his appointment was
inchoate, and was well revoked by the mayor.

3. That, assuming that the relator was regularly ap-
pointed and qualified, yet on August 8 he was removed
from office by the common council, and that was an end
of his rights.

4. That, even had the relator a good claim to this office,
Mr. Corliss is now *de facto* officer, as the relator, by com-
mencing *quo warranto*, has conclusively admitted that he
is out and that Mr. Corliss is in; therefore, until the end
of that proceeding, every one is bound to recognize Mr.
Corliss as city counselor, and to issue the *mandamus* would
be to compel the council to do an unlawful act.

5. That, by granting the writ prayed for, Mr. Corliss'

rights might be injuriously affected, as this proceeding does not give him his day in court.

6. That no evidence that the bond in question is either regular or sufficient has ever been brought to the attention of the council, and it has never refused to act in the matter.

It is also insisted that, conceding all the relator claims, the writ should not issue, for the reason that the granting what is prayed would, in effect, determine the title to the office, and that this should not be done by *mandamus*.

1. The present charter of the city of Detroit was passed in 1883, and repealed all acts or parts of acts in conflict therewith. Act No. 326, Local Acts of 1883, p. 579. By section 1, chapter 7, of the act, the legislative power of the city was vested in a common council, to be composed of a board of councilmen and board of aldermen. By section 2, chapter 4, certain officers were to be appointed by the board of councilmen, on the nomination of the mayor. Among such appointments was that of city counselor, to hold his office for the term of three years, beginning on the first day of July. In 1885 this section was amended by inserting, after the words "city counselor," the words, "who shall be a practicing attorney, and whose term and duties of office and compensation shall be prescribed by the common council." Act No. 383, Local Acts of 1885, p. 468. In 1887, section 2, chapter 4, was again amended by the substitution of the words "the common council" for the words "the board of councilmen." Act No. 488, Local Acts of 1887, p. 620. With this amendment, the section stood that the city counselor was to be appointed by the common council on the nomination of the mayor, and his term, duties, and compensation were to be prescribed by the common council. The Legislature also abolished at that session the board of councilmen, and the board of aldermen was to be known

as the common council.  Local Acts of 1887, pp. 623, 624.

The charter of 1883, by section 8, chapter 7, provided, also, that "all nominations by the mayor * * * shall be made to and be confirmed by the board of councilmen." This section was amended by the act of 1887, section 8, chapter 7, providing that. "all nominations by the mayor shall be made to and be confirmed by the common council;" but section 2, chapter 4, was left as it stood in the charter of 1883, except that the common council was to appoint, instead of the board of councilmen, on the nomination of the mayor.  These sections so stood until the act of 1893 took effect.

By section 5, chapter 4, the charter of 1883, which remains unchanged in this respect, provides that all officers, whether elected or appointed, shall hold their offices, respectively, until their successors shall be elected or appointed and qualified, and shall enter upon the discharge of their duties.

The act of 1893 is entitled "An act supplemental to the charter of the city of Detroit, and to provide for a law department in said city." It is argued that this act did not repeal the provisions of the charter in reference to city counselor, but that those provisions remain in force; that section 8, chapter 7, of the act, which provides that "all nominations by the mayor shall be made to and be confirmed by the common council," is still in force, and has reference to the office of city counselor.  But, as we have seen, there was a special provision of the charter of 1883, in reference to city counselor and certain other officers, in section 2, chapter 4.  The charter of 1887 also contained the same provision as that of 1883, standing in both as section 2, chapter 4.  The act of 1893, though entitled as supplemental to the charter, in very clear terms repeals the section of the old charter in reference to the manner of the appointment of the city counselor.  While

under the old charter of 1883, and the amendments of 1885 and 1887, first the board of councilmen and then the common council was to appoint on the nomination of the mayor, it is now provided by the act of 1893 that the mayor shall appoint. The act establishes an executive department, to be known as the department of law, to embrace the city counselor, city attorney, one chief assistant to each, and such other assistants, clerks, and subordinates as the common council shall see fit to prescribe and establish. By section 3 of the act the city counselor and city attorney are each required, before entering upon the duties of their respective offices, to execute a bond in the sum of $5,000, with such sureties as the common council shall approve, for the faithful performance of the duties of their respective offices. It is clear that, under the provisions of this act, the appointment of city counselor rests exclusively with the mayor, and not with the common council. The mayor is to appoint; and the only duty resting with the common council is the approval of the bond when presented. The act itself fixes the term of office, the amount of the salary, and the terms and conditions of the bond, and places the city counselor at the head of the legal department. It is conceded that the appointment was made, and filed with the city clerk. The relator thereupon filed with the city clerk his oath of office, and executed the bond, with two sureties, required by the act. This bond was sent to the common council for approval. By the petition it is shown that the bond was certified by the city attorney to be in proper form, and that it had indorsed upon it the justification of the sureties. The answer to this claim is that no bond with the justification of the sureties indorsed thereon has been before the committee on ways and means. It is evident from the return, however, that no objection was made to the form of the bond or the sufficiency of the sureties, but

that the action of the council in the premises was brought about by the attempted withdrawal by the mayor of the name of the relator as city counselor, and the appointment of Mr. Corliss. It appears that some differences arose between the mayor and the relator soon after the appointment was made, which- resulted in the action taken. We are, however, led to the conclusion that, under the act of 1893, the exclusive power of appointment to the office of city counselor is vested in the mayor. The appointment was duly made and filed, and when so made and filed was beyond the power of the mayor to recall. It was not inchoate, as claimed, but was absolute, and upon the relator's complying with the provisions of the act by filing his oath of office, and the approval of his bond by the common council, he was entitled to the possession of the office.

It is well settled that when the appointing power has once exercised its functions it has no more control. The language of the court in *Marbury v. Madison*, 1 Cranch, 137, is peculiarly applicable in the present case. It appears there that a *mandamus* was asked to compel the respondent, who was Secretary of State of the United States, to deliver to relator his commission as justice of the peace of the District of Columbia. Relator had been appointed to the office by President Adams, by the advice and consent of the Senate, and a commission had been signed by the President, and delivered to respondent to be sealed. It was said by the court:

"The last act to be done by the President is the signature of the commission. He has then acted on the advice and consent of the Senate to his own nomination. The time for deliberation has then passed. He has decided. His judgment, on the advice and consent of the Senate concurring with his nomination, has been made, and the officer is appointed. This appointment is evidenced by an open, unequivocal act, and, being the last act required from

the person making it, necessarily excludes the idea of its being, so far as respects the appointment, an inchoate and incomplete transaction. Some point of time must be taken when the power of the executive over an officer, not removable at his will, must cease. That point of time must be when the constitutional power of appointment has been exercised; and this power has been exercised when the last act required from the person possessing the power has been performed."

In *Mosher v. Stowell*, 9 Abb. N. C. 456, it appears that, by the charter of the city of Elmira, the common council was vested with the power of appointing a city chamberlain, whose term of office was fixed at three years. At a regular meeting of the council held March 11, 1879, a resolution was adopted and entered upon the minutes, purporting to appoint the relator to the said office in place of the previous incumbent, whose term of office had expired. On the same day the relator took the oath of office, and filed the same in the proper office. He presented his bond to the common council at a meeting held March 14, and on April 8 the bond was approved. The charter provided that the mayor should sign all appointments made by the council. There was no express proof that the appointment of the relator was or was not signed by the mayor. At a meeting of the council held on March 15 the council adopted a resolution purporting to rescind the appointment of relator, and to appoint respondent. On that day respondent took the oath of office and filed it with the city clerk, and on the same day the council approved his bond, and respondent entered into the office, and continued to hold it. It was held that the signature of the mayor was not necessary to complete the appointment, and that the mayor could not defeat the action of the council by withholding his signature. It was said:

"When the common council adopted the resolution appointing the relator, its action in respect to the choice of a chamberlain was complete. It had no authority to

rescind such action, the appointment being for a definite term, especially after the relator had signified his acceptance of the office by taking and filing the oath."

The subsequent resolutions, purporting to rescind the appointment of relator and appointing respondent, were held to be nulities.

In *United States v. Bradley*, 10 Pet. 343, it was held that the appointment of a paymaster is complete when made by the President and confirmed by the Senate; that the giving of a bond for the faithful performance of his duties is a mere ministerial act for the security of the government, and not a condition precedent to his authority to act as paymaster. The approval of the bond is not essential to the vesting of the title of the office in relator. *United States v. Bradley, supra; Coogan v. Barbour,* 53 Conn. 76; *United States v. Le Baron,* 19 How. 73; *Culver v. Armstrong,* 77 Mich. 194; *Bennett v. Benfield,* 80 Id. 265.

2. There was, therefore, no vacancy in the office of city counselor at the time the mayor attempted to appoint Mr. Corliss. The appointment of relator was complete and absolute, and a vacancy had not occurred, within the provisions of section 649, How. Stat. The relator had not refused or neglected to take his oath of office, or to give his official bond, or to deposit the same in the manner and within the time prescribed by law. The council could not arbitrarily refuse to approve the bond, and the excuse here set up by the return does not amount to a justification for the refusal or neglect to approve. It is apparent upon the face of the return that the action taken was not founded upon the form or conditions of the bond, or the insufficiency of the sureties, but upon the action of the mayor in his attempt to set aside the appointment of relator, and to appoint Mr. Corliss.

3. It is said, however, that the common council removed

97 Mich.—14.

relator from the office.   The action taken has been set out.
It is not claimed that they gave him any notice or hearing,
but it is contended that this power is conferred upon the
council by section 19, chapter 4, of the charter, which
reads:

"Any officer holding office by appointment, unless other-
wise provided by law or ordinance, may be removed at any
time by the common council, without charges and a trial
thereof, by a vote of the majority of the members-elect,
except the controller, receiver of taxes, and superintendent
of the house of correction."

This section has been carried in the charter since its
enactment in 1857, and may have been applicable to the
office of city counselor when the power of appointment
was vested in the board of councilmen and common council;
but the act of 1893 was intended to take and did take the
appointing power to this office out of the common council,
and vest it in the mayor.   It would render this provision
nugatory to say that the council now may remove at any
time without charges and trial.   Such power is inconsistent
with the power of appointment by the mayor for a fixed
term of years.   We think that it is now "otherwise pro-
vided by law."   It was said in *Mead v. County Treasurer*, 36
Mich. 419:

"Our State system favors appointments for fixed periods,
and almost entirely rejects the policy of removals at will."

In *Hallgren v. Campbell*, 82 Mich. 260, this Court said:

"We shall need to find in the charter of Menominee
clear and unequivocal power vested in the council to
remove this officer without notice before we can concede
that any such power exists."

Speaking of the case of *Ex parte Hennen*, 13 Pet. 230,
it was said:

"We have not found any case where an officer who was
appointed for a fixed term (and when the power of removal

was not expressly declared by law to be discretionary) has been held to be removable except for cause, and wherever cause must be assigned for the removal of the officer he is entitled to notice, and a chance to defend."

The attempt on the part of the council to remove the relator was insufficient.

4. The contention of counsel for respondent that Mr. Corliss is now a *de facto* officer, and every one is bound to recognize him as city counselor, might have some force if the official acts of Mr. Corliss were being questioned; but the only contention in the present proceeding is that it was the duty of the common council to approve relator's bond when it was presented, and that it should now be compelled to do so. It does not matter here whether Mr. Corliss be regarded as a *de facto* officer or a mere intruder; the fact remains that the relator was duly appointed, and his appointment could not be revoked by the mayor, and the council had no power of removal in the summary way attempted. It is the duty, therefore, of the council to approve relator's bond, even though Mr. Corliss be *de facto* city counselor. The vacancy, if one existed, was made by reason of the expiration of the term of relator under his former appointment, and was filled by his appointment by the mayor. It is true that it is conceded by the relator, in commencing *quo warranto* proceedings, that Mr. Corliss is in the office, but he claims that he is there wrongfully, and that the council should approve his (relator's) bond. It was the duty of the council, under the circumstances, to approve the bond.

5. Mr. Corliss' rights to the office, if he have any, will be considered in the *quo warranto* proceedings, when heard; but the council cannot shield itself behind the claim made to the office by Mr. Corliss, and refuse to perform a plain duty imposed upon it by the charter.

6. We think there is sufficient evidence, and uncontra-

dicted, upon this record, to warrant us in holding that the bond was proper in form, and that the sureties thereon justified their responsibility as required by the charter.

7. The claim made that *mandamus* is not the proper remedy has no force. It is asked to compel the performance of a purely ministerial act, and, no sufficient reason being given to the contrary, the writ must issue as prayed. The discussion of the power of the mayor and of the council, and the construction of the several provisions of the charter, become necessary to a determination of the relator's right to have his bond approved.

The other Justices concurred.