JOHN J. SPEED v. THE COMMON COUNCIL OF THE CITY OF DETROIT ET AL.

[See 97 Mich. 198.]

*Municipal corporations—Removal of officers—Power of council—Writ of prohibition.*

1. The writ of prohibition lies to prohibit the exercise by an inferior tribunal or officer of judicial powers with which it or he is not legally vested, and to prevent action in excess of the jurisdiction conferred by law, but not to regulate or control

the manner in which a lawful jurisdiction shall be exercised; citing Mechem, Pub. Off. §§ 1013, 1014.

2. The officer or body upon whom the Legislature has conferred the power to remove municipal officers for cause acts in a *quasi* judicial capacity, and the method of procedure must be of a *quasi* judicial character (*Stockwell v. Township Board*, 22 Mich. 341; *Dullam v. Willson*, 53 Id. 392; *Clay v. Stuart*, 74 Id. 411; *Fuller v. Attorney General*, 98 Id. 96); and such officer or body becomes an inferior tribunal, amenable to the writ of prohibition when acting in excess of the jurisdiction conferred.

3. The misconduct for which an officer may be removed must be found in his acts and conduct in the office from which his removal is sought, and must constitute a legal cause for his removal, and affect the proper administration of the office.

4. There is no restriction upon the power of the people to elect, or of the appointing power to appoint, any citizen to office, notwithstanding his previous character, habits, or official misconduct; citing *State v. Jersey City*, 25 N. J. Law, 536.

5. It was settled in *Speed v. Common Council of Detroit*, 97 Mich. 198, that the mayor could not revoke the appointment of a city counselor when once made, and that neither he nor the common council possessed the power to remove that officer at will.

6. The power to remove the city counselor of Detroit for cause is not inherent in the common council, nor is it vested in that body by the charter, nor can it be implied from section 8 of Act No. 419, Local Acts of 1893 (supplemental to the charter), which provides that upon the expiration of the term of office of the city counselor and the city attorney, or their resignation or removal, such officer shall forthwith, on demand, deliver to his successor in office all deeds, leases, contracts, and other papers and books in his hands belonging to the corporation, or delivered to him by the corporation or any of its officers, and all papers in actions prosecuted or defended by him, or which are pending and undetermined.

Motion by respondents to vacate order for writ of prohibition against the procedure of the common council in the investigation of charges preferred by the mayor against the city counselor of Detroit. Argued December 12, 1893. Denied January 5, 1894. The facts are stated in the opinion, and in 97 Mich. 198.

*Edwin F. Conely (Jasper C. Gates* and *Charles Flowers,* of counsel), for the motion.

*Hoyt Post (John D. Conely,* of counsel), *contra.*

GRANT, J.   The relator, Speed, was duly appointed city counselor and head of the department of law in the city of Detroit, July 15, 1893, and entered upon the duties of the office.   This appointment was made under Act No. 419, Local Acts of 1893, entitled "An act supplemental to the charter of the city of Detroit, and to provide for a law department in said city."   Under the decision in *Speed v. Common Council of Detroit,* 97 Mich. 198, Mr. Speed's appointment was declared valid, and the council directed to approve his bond.   Thereafter the mayor of the city lodged charges with the common council against Mr. Speed, for which he asked said council to remove him.   The council appointed a committee to investigate these charges, whereupon the relator filed this petition, asking for the writ of prohibition against the procedure of the council. The writ was granted, subject, however, to a motion to vacate it on cause shown.   The respondents made answer to the petition, and moved to vacate the order.   The principal question in the case is the power of the council to remove the city counselor for cause, but two preliminary matters will be first determined.

1. It is suggested, rather than seriously insisted, by the learned counsel for the respondents, that the writ of prohibition does not lie in the present case, for the reason that the common council was proceeding in a political or administrative way, rather than in any other.   They cite Mechem, Pub. Off. §§ 1019, 1020; High, Extr. Rem. §§ 769, 783; *Burch v. Hardwicke,* 23 Grat. 51; *People v. District Court,* 6 Colo. 534; *Smith v. Whitney,* 116 U. S. 167. The rule laid down by these learned authors is that the

writ lies only to prevent the unauthorized exercise by courts and officers of judicial powers, and does not lie to restrain executive or ministerial action; and the above authorities, together with others, are cited in support of the proposition.

In *People v. District Court,* the power to remove for certain causes was expressly conferred upon the city council of Leadville. No doubt, therefore, existed of the jurisdiction of the council in the matter.

In *Burch v. Hardwicke,* the power was also expressly conferred by the charter upon the mayor to suspend or remove officers for misconduct in office or neglect of duty.

In *Smith v. Whitney,* the writ was invoked to prohibit the Secretary of the Navy, and a general court martial of naval officers, from trying the relator upon charges which had been preferred against him.

In all these cases the respondents were proceeding under the express authority of law, and they are therefore clearly inapplicable to the present case.

The writ lies "to prohibit the exercise by an inferior tribunal or officer of judicial powers, with which he is not legally vested," and "to prevent actions in excess of the jurisdiction conferred by law, and not to regulate or control the manner in which a lawful jurisdiction shall be exercised." Mechem, Pub. Off. §§ 1013, 1014. Under the Constitution, the Legislature may provide for the removal of municipal officers. It certainly has never been regarded in this State that the officer or body upon whom this power is conferred acts in a purely political, administrative, or legislative capacity. Such officer or body acts, and must of necessity act, in a *quasi* judicial capacity, and the method of procedure must be of a *quasi* judicial character. *Stockwell v. Township Board,* 22 Mich. 341; *Dullam v. Willson,* 53 Id. 392; *Clay v. Stuart,* 74 Id. 411; *Fuller v. Attorney General,* 98 Id. 96. Such officer or body then becomes an

inferior tribunal, amenable to the writ of prohibition when acting in excess of the jurisdiction conferred. In such cases it is of little consequence what name is given to the power conferred. The name cannot relieve it of its essential character. It would be a reproach to the law if it did not provide a speedy remedy by which such tribunals can be prohibited from the exercise of an excess of authority, or of an authority which they do not possess. We are of the opinion that the writ lies in the present case. *State v. Common Council* (Minn.), 55 N. W. Rep. 118; *People v. Cooper*, 57 How. Pr. 416; 1 Dill. Mun. Corp. § 191 (4th ed. § 253).

2. While it appeared, upon the argument, to be conceded that the sufficiency of the charges is not here in issue, still we deem it proper to say that the charges preferred, so far as they relate to the acts of Mr. Speed committed before his appointment to and induction into this office, are clearly beyond the jurisdiction of the respondents to determine. There is no provision in the Constitution nor in the laws which prevents a person from holding office for misconduct in another office which he held prior to the one to which he was elected or appointed. We have been unable to find any authority which justifies a removal for such previous misconduct. The misconduct for which an officer may be removed must be found in his acts and conduct in the office from which his removal is sought, and must constitute a legal cause for his removal, and affect the proper administration of the office. There is no restriction upon the power of the people to elect, or the appointing power to appoint, any citizen to office, notwithstanding his previous character, habits, or official misconduct. *State v. Jersey City*, 25 N. J. Law, 536; *Com. v. Shaver*, 3 Watts & S. 338.

In *Com. v. Shaver*, it was held that the trial, conviction, and sentence of a sheriff for the offense of bribing a voter

previously to his election to the office did not disqualify him.

In *State v. Jersey City*, it was held that the expulsion of an alderman for receiving bribes did not disqualify him for election to the same office. See, also, *State v. Common Council, supra; Crawford v. Township Boards*, 24 Mich. 248; *Richards v. Clarksburg*, 30 W. Va. 502; 1 Dill. Mun. Corp. § 190 (4th ed. § 252), and note.

This may be a proper subject for legislative consideration, but, until the Legislature shall choose to disqualify persons from holding office for such reasons, they can constitute no cause for removal.

3. It was settled in the case of *Speed v. Common Council, supra,* that the mayor could not revoke the appointment when once made, and that neither he nor the common council possessed the power to remove at will. ' That case was ably argued, and received the most careful examination by this Court.    We see no occasion to change our views, or to question the soundness of the conclusions then reached.

Counsel for respondents, in their brief upon the application for a rehearing in that case, concede that " there is no provision whatever for the removal of an appointive officer upon charges, nor for the trial of such charges;" but they contend (1) that the power of removal is necessarily implied from the language used in the act of 1893; and (2) that the power of removal for cause is implied from the charter and from the nature of the municipal organization.                                        •

The only reference to removal from office in the act of 1893 is found in section 8, which reads as follows:

"Upon the expiration of the term of office of the city counselor and the city attorney, or their resignation thereof or removal therefrom, such officer shall forthwith, on demand, deliver to his successor in office all deeds, leases, contracts, and other papers and books in his hands belong-

ing to the corporation, or delivered to him by the corporation .or any of its officers, and all papers in actions prosecuted or defended by him, or which are pending and undetermined."

From this language it is argued that the power of removal for cause is necessarily implied, and the case of *State v. Somers,* 35 Neb. 322, is cited in support of the proposition. The provision of the statute of Nebraska then before the court for construction reads as follows:

" Said commissioner of health shall be appointed by the mayor, subject to the approval of a majority of the council; shall hold office for a term of two years from date of appointment, unless sooner removed or retired."

This statute was amended so as to read as follows:

"All officers appointed by the mayor and confirmed by the council shall hold the office to which they may be appointed until the end of the mayor's term of office and until their successors are appointed and qualified, unless sooner removed or the ordinance creating the office shall be repealed, except as otherwise provided in section 104."

Construing these provisions together, it was held that the right of removal was impliedly retained in the hands of the mayor, not in the council.

The difference between the two statutes is apparent. In that case the appointment was until the end of the mayor's term, unless sooner removed, while, in the present case, section 2 of the act conferring the power of appointment is as follows:

" He [the city counselor and the head of the legal department of the city] shall be appointed by the mayor on or before the third Tuesday in June for the term of three years from the 1st day of July next succeeding his appointment."

In *State v. Somers,* the clause in regard to removal is coupled directly with the appointment, in the same section and the same sentence, and no other object than the removal of the officer is apparent from the language. But in this

case it is obvious that the sole purpose of section 8 is to provide for a surrender of the books and papers to their proper custodian in the event of a lawful successor to the office, and it is fairly to be inferred that this purpose was in the legislative mind in adopting the enactment. Any other conclusion would do violence to the rules of construction. This act was supplementary to the charter of the city of Detroit, and its sole object was the creation of a new department. It is, in its character, an independent act, and, in the absence of controlling language referring to the charter, the language of the act must prevail. The character of this department and the office of the city counselor will be referred to hereafter.

There would be more force in this proposition of counsel if there were no officer mentioned in the act to which the term "removal" might apply; but the city attorney is elected, and, under the express provisions of the charter, may be removed for corrupt or willful malfeasance or misfeasance in office, or for willful neglect of duty, upon charges, which must be tried, and to which the officer shall have the right to make his defense. Charter, chap. 4, § 18. This act recognizes the city attorney in his *status* as an elective officer, and therefore the provisions of the charter as to his amotion apply. But, as to the city counselor and the head of the legal department, he is a new officer created by the act, to be appointed under the act, whose duties are specifically defined by it, whose term of office is fixed, and whose appointment is lodged solely in the mayor. If the Nebraska case were applicable to the facts of this case, it would follow that the power of amotion was lodged in the mayor to remove at will, and this question has been decided in *Speed v. Common Council, supra.*

Is the power to remove the city counselor appointed under this act inherent in the municipal corporation or

in its governing body, the common council? Judge Dillon, in his valuable work on Municipal Corporations (section 181; 4th ed. § 242), states that the question of implied power of removal by municipal corporations has not been judicially settled in this country, and ventures the opinion that, in the absence of any express or implied restrictions in the charter, such power exists. It is also stated in the opinion in *Richards v. Clarksburg*, 30 W. Va. 496, decided in 1887, which is largely relied on by respondents' counsel, that the court was unable to find a single case in the United States where this question had been decided. The charter, in that case, appears to have been entirely silent in regard to the removal of officers, and particular stress seems to have been laid upon the broad powers conferred by the statutes of West Virginia upon the common councils of towns and villages.

Under the facts of this case, however, we are not required to enter upon an extended discussion or determination of this question. The tendency of the decisions in this country is to regard municipal corporations as an aid to the state government, and to limit their powers to those which are expressly derived from the constitution and from legislative enactments, and to those implied powers only which are necessary to carry out the powers thus conferred. The highest tribunal in this country has declared the well-established rule on this subject in *Ottawa v. Carey*, 108 U. S. 121. Chief Justice Waite, speaking for the court in that case, said:

"Municipal corporations are created to aid the state government in the regulation and administration of local affairs. They have only such powers of government as are expressly granted them, or such as are necessary to carry into effect those that are granted. No powers can be implied, except such as are essential to the objects and purposes of the corporation as created and established."

See, also, *Taylor v. Railway Co.*, 80 Mich. 77; *People*

*v. Hurlbut*, 24 Id. 69.    In this latter case Mr. Justice
CHRISTIANCY said:

"But the common council of the city is not the city,
nor the legal entity known as the corporation of the city.
It is itself but a public board for municipal governmental
purposes, with just such powers (not forbidden by the
Constitution) as the Legislature have thought, or may
hereafter think, proper to confer."

In discussing the power of a common council to expel a
member, the supreme court of New Jersey, in *State v.*
*Jersey City*, 25 N. J. Law, 539, recognized the power of
a corporation at common law to expel a member for
sufficient cause, and in its opinion said:

"But the jurisdiction exercised in this case is not
derived from the common law. The common council is
not the corporation, and, whatever powers a municipal
corporation may have to amove or expel a member for
cause at common law, it is clear that the corporation itself
has not by any by-law delegated any of them to the
common council, and that body, therefore, cannot avail
itself of the common-law jurisdiction vested as an inherent
right in the corporation itself to expel a member of their
own body. The council derives its jurisdiction from the
charter of the corporation."

It is argued that the power of removal of the city
counselor is necessary in order properly to protect the
interests of the city from an incompetent or corrupt
incumbent, and therefore it must be inferred that the
Legislature recognized this power as existing. Courts may
not surmise or speculate as to the causes or reasons for
legislative enactments. With the reasons for conferring
or withholding a power the courts have no concern. They
must interpret the statute as they find it. The same
argument was made in *People v. Woodruff*, 32 N. Y. 355.
After stating the serious consequences which it was claimed
would be entailed upon the community under the interpre-
tation given, the court said:

98 Mich.—24.

"To obviate these alarming and startling results it is contended that we are to imply and infer an intent on the part of the legislature to have the power lodged in the comptroller, in the first instance, remain with and to be exercised by him whenever the exigency should arise which might call for it. It is a dangerous principle to imply power when it is not conferred by legislative authority in clear and distinct terms. It is always competent for the legislature to speak clearly and without equivocation, and it is safer for the judicial department to follow the plain intent and obvious meaning of an act, rather than to speculate upon what might have been the views of the legislature in the emergency which may have arisen. It is wiser and safer to leave to the legislative department to supply a supposed or actual *casus omissus* than attempt to do it by judicial construction."

The position, character, and duties of the officer created by the act are important considerations upon the principle under discussion. He is required to be an attorney of five years' practice, to give a bond of $5,000 for the faithful performance of his duties, and to devote his entire time to the duties of the office. He must therefore abandon all his other legal business. He is made the legal adviser, not only of the common council, but of all the other departments of the city government and the boards thereof, except the board of police commissioners. It is apparent that the Legislature contemplated that a man of high standing and character in his profession should be appointed to this important position. Is it unreasonable to infer that the Legislature intended to place this important office beyond the control or fear of any other department? That such a man should become incompetent, corrupt, and neglectful of his duties would be an exception to the rule. If it be said that the exception might arise, it may likewise be said that in the change of administrations, when the political complexion of the common council might change, false charges might be made for political purposes in order to

remove the incumbent, and replace him by another of the same political faith as the council. Experience has demonstrated that there is at least as much danger of the one as of the other. These considerations may have had weight with the Legislature. The reasons for a fixed term without the power to remove may have had greater weight with legislators than the risk of malfeasance or misfeasance on the part of the officer. They may well have deemed it important that the head of such a department should be free from all fear of removal or interference on the part of the common council. If, however, it was a *casus omissus* on the part of the Legislature, it is one which the Legislature and not the courts must supply.

No support for the position of respondents can, we think, be found in the charter itself. The subject of removals is completely covered by its provisions, and it excludes removals in any other manner than is there provided. Elective officers, with few exceptions, can be removed for cause. This, under the well-established rule, excludes the power to remove at will. Certain appointive officers, under the charter, can be removed at will, without charges or trial. Charter, chap. 4, § 19. This likewise excludes the power to remove for cause. Where the power to remove at will is given, the law does not contemplate that the officer may be put to the expense of a trial for cause, and have charges of official misconduct placed before the public. Dill. Mun. Corp. § 183 (4th ed. § 245); *State v. Jersey City*, 25 N. J. Law, 536; *Speed v. Common Council*, 97 Mich. 198, and authorities there cited; *State v. Somers*, 35 Neb. 322; *Crawford v. Township Boards*, 24 Mich. 248. In *Mead v. County Treasurer*, 36 Mich. 416, 418, it is said:

"The general statute concerning removals contains no provision applicable to superintendents of the poor. Hence, there would seem to be no provision for the removal of these officers except the specific regulation in the supervisors' act. It would therefore seem that the Legislature

meant to confer on the supervisors a power to remove on the two specified grounds, but had no intention to give the right on any other ground, or to delegate to the supervisors a discretionary general power to remove. The provision in the supervisors' act, in so far as it applies to superintendents of the poor, would be rendered entirely gratuitous if a general authority to remove were to be implied, or should be considered as a consequence of the power to appoint."

It is also significant that the act gives the common council no voice, either in the appointment or confirmation of the city counselor. The absolute authority and the entire responsibility of his appointment are given to the mayor, without power of removal at will or for cause. There is nothing in the act which shows any intention on the part of the Legislature to confer such power upon the common council; nor do we think such power is inherent in the council, which is the governing body of the municipal corporation, and derives its powers from express legislative enactments.

The motion to vacate the order must therefore be denied, with costs.

The other Justices concurred.

